## MOBILE & OHIO RAILROAD CO. *vs.* HOPKINS.

[ACTION AGAINST RAILROAD COMPANY, AS COMMON CARRIER, FOR LOSS OF
PASSENGER'S BAGGAGE.]

1. *Common carrier; liability for loss of passenger's baggage; stipulation for exemption in free ticket.*—Although a common carrier may specially contract for exemption from the extraordinary responsibility imposed on him by the common law, public policy forbids that he should be allowed to contract for exemption from liability for damages caused by the negligence, willful default, or tort, of himself or his servants; and this rule applies also where he undertakes to transport passengers gratuitously, or under "free tickets," containing an express stipulation on the part of the passenger, that, "in consideration thereof, he assumes all risk of accidents, and expressly agrees that the carrier shall not be liable under any circumstances, whether of the negligence of his agents or otherwise, for any injury to the person or property."

2. *Same; stipulation limiting value of baggage.*—The same rule applies to an express stipulation in tickets, or checks for baggage, limiting the responsibility of the carrier to a specified sum as the value of a passenger's baggage: such stipulation, though made by special contract, can not exempt the carrier from liability for the negligence, willful default, or tort, of himself or his servants.

3. *Same; termination of liability by delivery; agency question of fact.*—A delivery of baggage by a railroad company, at the end of the passenger's journey, either to him or to his authorized agent, terminates the liability of the company as a common carrier; but a delivery at the terminus of the defendant's road, to the baggage-master of an independent steamboat company, who, by agreement between the railroad and steamboat companies, always entered the defendant's cars before their arrival at the depot, and took the baggage-checks of through passengers, giving in exchange for them the checks of the steamboat company, would not discharge the defendant from liability for a loss caused by the larceny of its servants after the delivery of the baggage to the baggage-master of the boat, unless the baggage-master was the plaintiff's authorized agent to receive the baggage; and it being a controverted question of fact in the case, whether he was the plaintiff's agent to receive his baggage, or the defendant's agent, by agreement with the steamboat company, to take charge of the baggage and deliver it at the boat, a charge which, in effect, assumes that he was the plaintiff's agent, is an invasion of the province of the jury.

APPEAL from the City Court of Mobile.
Tried before the Hon. H. CHAMBERLAIN.

Mobile & Ohio Railroad Co. v. Hopkins.

THIS action was brought by Mrs. Julia A. Hopkins, against the appellant, and was commenced on the 30th October, 1866. The complaint contained two counts, which were in the following words: (1.) "The plaintiff claims of the defendant fifteen hundred dollars, as damages, for the failure to deliver certain goods, viz.," (specifying them,) "all the property of the plaintiff, of great value, to-wit, of the value of fifteen hundred dollars, received by the defendant, as a common carrier, to be delivered to the plaintiff at Columbus, Kentucky, for a reward; which the defendant failed to do." (2.) "The plaintiff claims of the defendant, also, the further sum of fifteen hundred dollars, as damages, for this: that heretofore, to-wit, on the 13th day of March, 1866, at the city of Mobile in the county aforesaid, the said defendant, being then and there a common carrier of passengers, baggage, and goods, on a certain railroad of the defendant, between the said city of Mobile and Columbus, in the State of Kentucky; and the plaintiff being then and there a passenger of the defendant's on said railroad, and intending to travel on said railroad, from Mobile to Columbus, of all which the defendant then and there had notice; the defendant, in consideration that the plaintiff would then and there deliver to the defendant a certain trunk of the plaintiff, then and there containing wearing apparel, and other goods and chattels of the plaintiff, of great value, to-wit, of the value of fifteen hundred dollars, in good order and condition, to be carried by the defendant for the plaintiff, as baggage, from Mobile to Columbus aforesaid, then and there undertook and promised the plaintiff to carry the said trunk, and the wearing apparel and other goods therein contained, safely, from Mobile to Columbus aforesaid, and to deliver the same to the plaintiff, in like good order and condition, at Columbus aforesaid. And the plaintiff avers, that, confiding in the said promise and undertaking of the defendant, she did then and there deliver to the defendant, and the defendant did then and there receive from the plaintiff, the said trunk, with the said wearing apparel and other goods and chattels therein contained, in good order and condition, to be safely carried by the defendant, for the plaintiff, from Mobile to Colum-

bus aforesaid, as baggage, and to be delivered to the plaintiff, in like good order and condition, at Columbus aforesaid. Yet the said defendant, not regarding its said promise and undertaking, did not, nor would, safely carry the said trunk, with the said wearing apparel and other goods and chattels therein contained, from Mobile to Columbus, for the plaintiff, and did not, nor would, deliver the same to the plaintiff, in like good order and condition, at Columbus or elsewhere, though often requested so to do; but, on the contrary thereof, the said defendant so carelessly, negligently, and improperly behaved and conducted itself, in respect to the said trunk, and the said wearing apparel, goods, and chattels therein contained, that by and through the mere and gross carelessness, negligence, and misconduct of said defendant and its servants, in that behalf, the said trunk was broken open by a servant or employee of said defendant, whilst in the possession of said defendant as aforesaid, and the said wearing apparel, goods, and chattels taken therefrom, and greatly damaged, and wholly lost to the plaintiff; to her damage," &c.

The defendant filed three pleas; the first of which was a general denial of "each and every allegation of said plaintiff's complaint," and the others were in the following words: (2.) "And for further plea in this behalf, defendant saith, that said plaintiff ought not to recover, because he saith that, on said 13th March, 1866, plaintiff was received by defendant as a passenger on its said train, not as a passenger to be carried for hire or reward, but as a compliment to said plaintiff, because she was the widow of a former president of said defendant company; and no hire or reward was paid by her, or received by the defendant, for the carriage of herself or baggage upon said defendant's road, at the time, and in the manner complained of; and said plaintiff received and accepted from defendant a ticket, in words and figures following," &c., (setting it out,) " and came into defendant's cars, and she and her baggage were transported on and over defendant's road, upon the undertaking and agreement, and upon the terms stated in said ticket, and upon no other. And the defendant avers, that the loss of baggage complained of by the plaintiff oc-

Mobile & Ohio Railroad Co. v. Hopkins.

curred at the time of the transportation and carriage aforesaid, and at no other time." (3.) "And for further plea in this behalf, the defendant saith, that the plaintiff ought not to recover, because it saith, that true it is that said plaintiff was, on said 13th March, 1866, a passenger on defendant's railroad, from Mobile to Columbus, and did then and there deliver to defendant a certain trunk, containing sundry goods, as baggage of said plaintiff; and the defendant avers, that the plaintiff and her said baggage were received on said defendant's cars, to be carried from Mobile to Columbus, without fee or reward, and upon the express understanding and agreement, that said plaintiff assumed to herself all risk of accident, and that the defendant should not be liable under any circumstances, whether of the neglegence of their agents or otherwise, for loss or injury to her person or property; and that the loss and injury complained of happened to plaintiff's property while she was so travelling upon defendant's line of road, and upon the understanding and agreement aforesaid."

The ticket set out in the second plea, which was signed by the president of said railroad company, was in the following words:

### MOBILE AND OHIO RAILROAD.

NOT TRANSFERRABLE.

*PASS MRS. A. F. HOPKINS,*

*To Columbus, Kentucky.*

☞ The person accepting this free ticket, in consideration thereof, assumes all risk of accident, and expressly agrees that the company shall not be liable, under any circumstances, whether of the negligence of their agents or otherwise, for any injury to the person or property.

☞ If presented by any other person than the individual named therein, the conductor will take up this ticket and collect fare.

The plaintiff took issue on the first plea, and demurred to the second and third, assigning the following causes of demurrer to each: " 1st, that said plea does not deny that the injury complained of was occasioned by the gross neg-

32

ligence of the defendant or its servants; 2d, that said plea does not deny that the injury complained of was occasioned by the misconduct of the defendant or its servants; and, 3d, that said plea is, in law, an admission that the injury complained of was occasioned by the gross negligence or misconduct of the defendant or its servants, and the facts stated in the plea are not such as to relieve the defendant from liability for such injury." The court sustained the demurrer, and the trial was had on issue joined on the first plea.

"On the trial of the cause," as the bill of exceptions states, " the following facts were proved : That the defendant is a corporation, operating a line of railway for the transportation of passengers and freight, from its depot at Mobile, Alabama, to its depot at Columbus, Kentucky; and that there is a steamboat running regularly on the river, from Columbus, Kentucky, to Cairo, Illinois; which said steamboat does not belong to said defendant, and is not managed or directed by said defendant, but by independent parties, and is run by them in concert with said defendant's trains, so as to transport passengers from Columbus to Cairo. Prior to the 13th March, 1866, plaintiff applied to defendant for, and received from it, to travel on its road, without compensation for carriage of herself or baggage, the ticket which is set out in defendant's second plea; and on said 13th March, 1866, intending to go to Virginia, she became a passenger on defendant's cars, from Mobile to Columbus, and accepted and used said ticket, and travelled by virtue of said ticket. Plaintiff. and her baggage were safely landed from defendant's cars, at Jackson, Tennessee, and remained there until the 21st March, 1866; on which day, by virtue of said ticket, plaintiff again became a passenger on defendant's cars, and used said ticket for that purpose, from Jackson, Tennessee, to Columbus, Kentucky. At Jackson, Tennessee, plaintiff delivered her baggage, consisting of four or five trunks, to the defendant's proper servant, the baggage-master, and received from him, as a token of said deposit, a slip of brass, commonly known as a baggage-check, on which were impressed the following marks and numbers : ' No. —. In consideration of free

Mobile & Ohio Railroad Co. v. Hopkins.

carriage, its value is agreed to be limited to $100.' The
rule of the defendant, which is also printed on the face of
all passenger-tickets issued by it, is, 'Baggage to consist of
ordinary wearing apparel, and no responsibility for it over
$100 in value. Company not responsible for unchecked
baggage.' No separate charge is ever demanded of a pass-
enger for the carriage of his baggage : it is carried by the
defendant, as above stated, upon payment of the regular
passenger fare, of so much per mile. By agreement be-
tween the defendant and said steamboat company, the bag-
gage of passengers by the cars is transferred by the ser-
vants of the latter, from the platform at Columbus, where
the cars stop, to the boat. The defendant's servants place
the baggage, from its cars, on the platform at the depot,
whence it is carried to the boat by the servants of the steam-
boat company; and this was the usual and customary mode
of doing business, on said 21st March, 1866, and before
and since that time. To facilitate the transfer of baggage,
and expedite the traveller on his journey, it was and is usual
for the baggage-master of the boat to enter the defendant's
cars, at the first station south of Columbus, go through the
cars, collect the baggage-checks of those passengers who
were going beyond Columbus, and who chose so to surren-
der them, and, before the cars reached Columbus, deliver
the checks thus received to the defendant's baggage-master,
and place on the baggage the checks of the steamboat
company. The baggage, thus re-checked, was separated
from the other baggage, which remained in the cars until
delivered by the defendant's baggage-master to the person
presenting the company's checks. Baggage is always de-
livered to the person who presents the check received by
the passenger, which is the counterpart of that attached to
the baggage. Before reaching Columbus, the plaintiff de-
livered to the baggage-master of the boat, as was usual,
the checks which she had received from the defendant, and
received from him, in lieu thereof, a card with the number
of her check, and did not herself demand her baggage from
the baggage-master, but passed directly on to the boat,
which lay in the river, at the distance of one or two hun-
dred yards from the platform where the cars stopped at

Columbus. As was usual, before the train stopped at Columbus, the defendant's baggage-master received the checks for the plaintiff's baggage, from the baggage-master of the boat, and her baggage was separated from that for which the checks had not been surrendered; and the defendant's baggage-master thereafter considered it in charge of the boat's baggage-master, though it still remained in the defendant's baggage-car. On the arrival of the cars at Columbus, the defendant's baggage-master, in the manner usual and customary in the defendant's business, caused the plaintiff's baggage to be delivered from the baggage-car, and placed on the platform of the depot at Columbus. The baggage-master of the boat was then and there superintending the removal of the passengers' baggage in the manner usual and customary. At the time of its removal from said baggage-car, the plaintiff's said trunk was whole and sound, as when received from her by the defendant. The plaintiff first learned of the loss of her trunk, which was one of her trunks carried as baggage aforesaid, after she had gone on board of the boat at Columbus, on her way to Cairo, Illinois, when the baggage-master of the boat informed her that one of her trunks had been left behind; but he promised, that it should be sent by the next trip of the boat, and would reach her at Cincinnati. The plaintiff has never received her trunk, but only a small part of the contents thereof. The articles so received by her were found, with other stolen articles, in a room of defendant's freight-house at Columbus, which was occupied by a watchman and switchman in the defendant's employment, one of whom was afterwards tried and convicted of the felony, while the other escaped. These men were employed by the defendant in its local service at Columbus, and were not in any way connected with the defendant's trains.

"The court charged the jury, that the defendant was a common carrier, and was liable for all losses, not caused by the act of God, or the public enemy; that though it might, by special contract, limit its liability to some extent, it could not, by any contract, exempt itself from liability for loss arising from the gross negligence or misconduct of itself or its employees; that the restriction expressed in

the ticket accepted and used by the plaintiff, furnished no defense to the defendant, against the plaintiff's demand for loss by the larceny of the defendant's servants, while acting as such; and that in like manner, though the defendant might make reasonable by-laws, and limit the amount of its liability in certain cases, the limitation of one hundred dollars to the value of passengers' baggage would be unreasonable, and could not apply, if the loss arose from gross negligence, or misconduct, of the defendant's servants.

" The court charged the jury, also, as to the termination of the risk, that if they believed the plaintiff's trunk was delivered at Columbus, to a person whom the plaintiff knowingly appointed her agent, and authorized to receive it, then the defendant would not be liable; but, if she delivered her check to a person who passed through the cars, and who was receiving checks from passengers by permission of the defendant, she not knowing for whom such person was acting, that would not so constitute him her agent, that a delivery of plaintiff's trunk to him by the defendant would discharge the defendant from liability; that the delivery of plaintiff's trunk, by the defendant's baggage-master, to the baggage-master of the boat, on the presentation by him of the check which the plaintiff had received from the defendant, and a taking charge thereof by him, before the cars reached Columbus, would not be a delivery, to relieve the defendant from its liability; that the defendant's liability ceased, only when it delivered the baggage, at Columbus, to the plaintiff, or to some one whom she had authorized to receive it for her; and the court referred to the jury the question, whether the trunk had been delivered by the defendant to any one at Columbus, and, if so, to whom, and whose agent was the person to whom such delivery was made.

" The defendant excepted to each of these charges, and requested the court to instruct the jury, that if the plaintiff made no application herself for her baggage, and it was applied for by the party to whom she delivered her check, and delivered to him, the fact that no application was made by her might be considered by them, in determining the question as to his authority to receive it, as well as any ac-

quiescence in his having received her baggage; also, that
the delivery of freight or baggage on the platform of the
company, at the end of the journey, to one charged to
receive it by the plaintiff, (the plaintiff being present,) and
who receives it, and surrenders to the company the check
given for it, puts an end to the liability of the carrier; also,
that if the jury believed, from the evidence, that the plain-
tiff received from the railroad baggage-master a check for
the trunk sued for, and, when near the place of destination,
delivered the check to the baggage-master of the steam-
boat company, so as to authorize him to receive the trunk
on arrival, and that it was safely landed from the baggage-
car on the platform of the company, at Columbus, and was
there received by the baggage-master of the steamboat
company, and the check surrendered by him to the baggage-
master of the railroad, (the steamboat line being discon-
nected from the railroad company,) then the duty of the
defendant was at an end. The court gave each of these char-
ges as requested.

"The defendant also requested the court to charge the
jury—1st, 'that if the plaintiff's baggage was safely car-
ried, and delivered from defendant's car, on the platform
at the terminus of the defendant's line, in the manner usual
in the defendant's business, the plaintiff can not recover;'
2d, 'that if the plaintiff received from the defendant a
check for her baggage, and delivered said check to the
baggage-master of the steamboat, and he delivered it to
the baggage-master of the defendant, and took charge of
the baggage, in the manner usual and customary in the
defendant's business, at the terminus of the defendant's
road, the plaintiff can not recover;' 3d, 'that if the defend-
ant delivered plaintiff's baggage, at the terminus of its
road, according to its customary mode of business, to a
person who presented the check which the plaintiff had
received from the defendant for her baggage, and which
such person had received from plaintiff, plaintiff can not
recover.' The court refused to give each of these charges,
and the defendant excepted to their refusal.

"The defendant also asked the court to charge the jury,
that if they believed, from the evidence, that the plaintiff

received a check for the carriage of her trunk, under which it was carried, and which limited the liability of the company for baggage to one hundred dollars, and that this trunk was one of several carried as baggage with the plaintiff as a passenger, and that the carriage of the company was without any payment of freight or passage, paid or to be paid to the company, but under the agreement of the company with the plaintiff set forth in the complimentary ticket which she received, (the defendant having no notice of the value of the articles in the trunk, nor of what such articles consisted,) the defendant could not, if liable, be charged for a greater amount than one hundred dollars. The court refused to give this charge, and the defendant excepted to its refusal."

The sustaining of the demurrer to the second and third pleas, and the several rulings of the court in the charges given and refused, to which exceptions were reserved, are now assigned as error.

P. HAMILTON, and GEO. N. STEWART, for appellant.—There was no conflict whatever in the evidence. The facts of the case were undisputed, and they present for decision three important questions. 1. Was the defendant liable at all, under the ticket which the plaintiff received and used, for the loss of her baggage, or any other injury which she might have received? 2. If liable at all, was not that liability restricted to the amount expressly stipulated as the value of a passenger's baggage?' 3. Was not the defendant's liability, whatever it was, terminated by a proper delivery of the baggage at the end of the plaintiff's journey?

1. A common carrier may, by special contract, limit and restrict the extraordinary liability which the common law cast on him.—*Steele & Burgess v. Townsend*, 37 Ala. 247 ; *Dorr v. N. J. Steam Nav. Co.*, 1 Kernan, 485 ; 3 Wallace, (U. S.) 107 ; *Wells v. Central Railroad Company*, 24 N. Y. 181 ; *Perkins v. Same*, 24 N. Y. 196 ; *Bissell v. Same*, 25 N. Y. 442. The defendant here did specially contract for exemption from liability, "under any circumstances, whether of negligence of their agents or otherwise, for any injury to person or property ;" and the plaintiff expressly assumed

"all risk of accidents." Under the contract evidenced by this ticket, the defendant did not occupy to the plaintiff the relation of a common carrier : one important element of that relation is wanting—no reward was paid or received for the service to be performed.—1 Pick. 50 ; 2 Dana, 430 ; 1 Salk. 249. The case presents no question of antecedent public duty on the part of the defendant, and excludes the idea of any implied contract : it stands entirely on a consideration of the liability actually assumed. The defendant is a corporation, and can only act through its agents or servants ; and it was a fair matter of agreement between it and the plaintiff, which should assume the risk of these careless or dishonest agents. The agents themselves remain responsible, civilly and criminally, for their acts ; and the contract does not in any manner enure to their benefit, or shield them from the consequences of their acts. The defendant was under no obligation to carry the plaintiff gratuitously, and the plaintiff was not compelled to accept the proffered compliment. She might have refused the free ticket, and compelled the defendant to carry her under its ordinary rules of responsibility; but, having accepted it, and received the benefits of it, she can not now repudiate the risk which she thus voluntarily assumed. The contract was valid, and the loss fell within its terms.—See New York cases above cited ; also, 4 Selden, 381 ; *Kimball v. R. & B. Railroad Company*, 26 Vermont, 247 ; 7 English L. & Eq. 395 ; 14 *ib.* 340 ; 5 *ib.* 329 ; 11 *ib.* 506 ; 36 *ib.* 574 ; 25 *ib.* 396 ; 10 *ib.* 366.

2. If the defendant could protect itself, by contract, against loss by reason of the negligence of its servants, as the authorities above cited hold, it could certainly limit the amount of liability to be incurred from the same cause. Besides, the baggage was carried without charge ; and in consideration of its free carriage, it was expressly agreed, that its value should, without further inquiry, be limited to one hundred dollars. In the carriage of passengers' baggage, a railroad company is a common carrier, and may by contract limit its liability. It receives no compensation for such service, and does not know the nature or value of the articles contained in the trunk. It is but reasonable that

it should limit the amount of its risk; and it would be a fraud on the carrier, to allow the passenger, after having been notified of the limitation, to reject it after a loss has occurred.—Redfield on Railways, § 134; 1 Parsons on Contracts, § 711, and note; Angell on Carriers, § 245; 2 Greenl. Ev. § 215.

3. As to the termination of the defendant's liability: Without regard to the construction of the contract on the points above stated, it is insisted that the facts clearly showed a termination of the defendant's liability; that it had performed all that it had undertaken to do; and that the court might properly have charged the jury, if they believed the evidence, they must find for the defendant. It was the defendant's duty to carry the trunk to the end of its road at Columbus, and there deliver it, in the manner usual and customary, either to the plaintiff, or to any other person whom she might authorize to take charge of it; and it was the duty of the plaintiff, on the other hand, to be present in person, or through her agent, to demand and receive it. The trunk was safely delivered on the platform at the depot, according to the defendant's usual mode of doing business, and was there received by the person to whom the plaintiff had surrendered her check, and who was the only person that could demand it. The baggage-check was the evidence of the contract between the parties: it stands in the place of a bill of lading.—2 Redfield on Railways, 38–9; 7 Rich. (S. C.) 158. The possession of this check is proof of the holder's authority to receive the baggage. The defendant was bound to deliver, and did deliver the trunk, "in the usual manner it delivers baggage."—29 Eng. Law & Eq. 347; 7 Common Bench, 839; 15 La. Ann. 14; 23 Howard, 38; 5 Dutcher, 392; 1 Gray, (Mass.) 263; 12 Indiana, 55; 23 Vermont, 186; 34 N. Y. 551; Richards v. Railway Company, 7 M., G. & S. 839; 33 Law & Eq. 235. That the plaintiff was chargeable with notice of the defendant's rules, and customary mode of doing business, see 11 Wheaton, 438; 9 Wheaton, 582; 2 Sm. & Mar. 227; 26 Law & Eq. 297. There was no controverted question of fact in the case; no uncertainty as to the character in which the baggage-master of the boat

was acting; no pretense that his acts were not authorized by his employers, or that the plaintiff was in any manner deceived or misinformed as to his character and authority. The plaintiff was under no obligation to entrust her checks or baggage to his care, and consulted her own convenience only in doing so, relying on the responsibility of his principal, the steamboat company, for his acts. It is submitted that the court erred in its rulings on this point, and particularly in the refusal of the second charge asked by the defendant. That charge was justified by the evidence, and asserted a correct legal proposition; and it ought to have been given as asked.

WM. G. JONES, *contra.*—1. The law is settled in this country, that a person travelling gratuitously, or under a free ticket, may recover damages of the carrier, for injuries resulting from gross negligence, or malfeasance.—*Phil. & Reading Railroad Company v. Derby*, 14 Howard, 468; *Steamboat New World v. King*, 16 Howard, 469; Redfield on Railways, 328.

2. It may be conceded to be now settled, after much doubt and conflict of decision, that a common carrier may, by special contract, to some reasonable extent limit his common-law liability; but it is equally well settled, that he can not thus relieve himself from liability for injuries resulting from the tortious acts, or gross negligence, of himself or his servants.—Story on Bailments, §§ 507, 549, 554, 570; *New Jersey Steam Navigation Company v. Merchants' Bank*, 6 Howard, 344–83; *Steele & Burgess v. Townsend*, 37 Ala. 254. A reasonable limitation of liability is a very different thing from total exemption from liability: while the former is allowed, the latter is forbidden. If the stipulation contained in the plaintiff's free ticket could be reasonably construed as intended to relieve the carrier from liability for the tortious acts, or gross negligence, of its servants, it would be, to that extent, unlawful and void. But such is not the reasonable construction of the stipulation. It simply means, that the plaintiff assumed the ordinary risks incident to that mode of travel.—6 Howard, 344–83.

3. As to the amount of damages: The limitation of one hundred dollars, as the value of passengers' baggage, if it be a reasonable limitation, and if it were brought home to the knowledge of the plaintiff, could not exempt the carrier from liability for tortious acts,—for actual misfeasance. See authorities above cited.

4. The *onus* of showing a delivery was on the defendant. There was no pretense of a delivery to the plaintiff in person. The effort was to charge her with the delivery to the baggage-master of the steamboat, as her agent. The evidence presented two questions of fact for the determination of the jury: 1st, whether he was her agent; and, 2d, if he was, whether there was a sufficient delivery to him to discharge the defendant from liability. The instructions of the court to the jury, on these points, were certainly as favorable to the defendant as the rules of law warranted. If a railway company allows an agent of another company to receive baggage at their station, they are bound by his acts; and if they employ porters at their stations, to carry passengers' baggage to carriages or other vehicles, they are liable until there has been a proper delivery by the porter.—*Jordan v. Fall River Railway*, 5 Cushing, (Mass.) 69; Redfield on Railways, 243; 7 Mann., Gr. & S. 839; 29 Law & Eq. 347. The question of agency was properly submitted to the jury.

JUDGE, J.—The common carrier is subjected by the law to a severe responsibility. He is not only responsible for losses and injuries caused by his negligence, but the law raises an absolute and conclusive presumption of negligence, whenever the loss occurs from any other cause than "the act of God, or the public enemy." And this rule of the law, it is said, is at least as ancient as the reign of Elizabeth.—2 Parsons on Contracts, 158.

This responsibility, being founded on the most salutary grounds of public policy, was originally considered as beyond the reach of the carrier himself, and as beyond the reach of limitation by special contract with the shipper. But we consider it as now well settled, that, while the carrier cannot limit his liability by any general notice, he may

legally contract for exemption from that extraordinary responsibility imposed by the common law, by which he becomes an insurer.—*Steele & Burgess v. Townsend*, 37 Ala. 247. To this extent he may go, in the limitation of his liability, but not further. Public policy forbids that he should be allowed to contract for exemption from liability for damage occasioned by the negligence, willful default, or tort, of himself or his servants.—2 Redfield on Railways, 82–98; 2 Parsons on Contracts, 240–251.

The contract made between appellant and appellee, in the present case, was, that in consideration of a free ticket, or free passage, appellee assumed all risk of accidents, and expressly agreed that appellant should not be liable, under any circumstances, whether of the negligence of its agents or otherwise, for any injury to her person or property. It is contended that, under this contract, appellant does not hold to appellee the relation of common carrier and that " its duty should not be measured by that rule because one element of that relation is wanting—viz., appellant received no reward for the service to be performed."

The relation of common carrier and passenger certainly subsisted between the parties, notwithstanding the contract; but, whether the effect of gratuitous transportation, in such case, is to exempt the carrier from that liability imposed by the common law, by which he becomes an insurer—viz., such as arises from those conclusive presumptions of negligence which are raised by the law in the absence of *nonfeasance*, or *misfeasance* and wrong—we need not determine, as no such question is presented by the record. We do hold, however, that it makes no difference whether the service is performed gratuitously or not, in regard to the obligation to perform it well, after it is once entered upon ; for, ever since the decision of the leading case of *Coggs v. Bernard*, (2 Smith's Leading Cases, 82,)it has been regarded as sound law, that " the confidence induced by undertaking any service for another, is a sufficient legal consideration to create a duty in the performance of it." And we hold further, that, in undertaking the performance of gratuitous transportation, the common carrier can no more stipulate for exemption from liability for damage occasioned by the

Mobile & Ohio Railroad Co. v. Hopkins.

negligence, or willful default, or tort, of himself or his servants, than he can when he receives a reward for the service to be performed : both are alike prohibited by a sound public policy, which also forbids a gratuitous bailee, not bound by the considerations of public duty attached to the office of a common carrier, from stipulating that he may be fraudulently negligent, or safely dishonest.

Railroad companies are incorporated, in part at least, from public considerations, and for the public good. As carriers of persons and property, it has been held they may be considered as acting in a public capacity, and as a kind of public officers. The exercise of honesty, care, and diligence, by them or their agents and employees, is a *public duty*, resulting from their position ; the obligation to perform which, cannot be thrown off by contract. If thus thrown off, the effect would be to relax, or modify, the performance of the duty, and to promote a relaxation of proper care in the selection of agents and servants for its performance.

A learned law-writer in his work on contracts, (2 Parsons, 233,) says : " The more courts have regarded the responsibility of the common carrier as created by the law for *public reasons*, the less willing have they been that it should be placed within the control of one or both the parties, to be modified at their pleasure." And the fact that the carrier is an artificial person, with no power of action except through its agents and servants, should not confer upon it rights and immunities, in the respect named, superior to those possessed by natural persons.

A case decided in the court of exchequer in England, in 1867, (*Booth v. North Eastern Railway Company*, 2 Law Excheq. 173,) is analogous in principle to the case in hand. In that case, a contract was made for the conveyance of cattle by railway, which contained the following, amongst other conditions : " The owner takes all risks of loading, unloading, and carriage, whether arising from the negligence or default of the company or their servants, or from defect or imperfection in the station, platform, or other places of loading or unloading, or of the carriage in which the cattle may be loaded or conveyed, or from any other

cause whatsoever." "The company will grant free passes to persons having the care of live stock, as an inducement to owners to send proper persons with, and to take care of them." The action was brought for the failure safely to carry and deliver the cattle. The court held, that the first of the conditions named above "was unreasonable, and that its unreasonable character was not removed by the fact that the company, under the second condition, granted, and the owner accepted, a free pass for a person who travelled with the cattle sent." This adjudication, though made under the influence of the railway and canal traffic act of 17th and 18th Victoria, sustains, in principle, our conclusion as to the character of the contract in the case before us.

It has been held in Indiana, that "an agreement upon a free pass, that the person accepting it assumes all risk of personal injury and loss or damage to property, whilst using the trains of the company, does not exempt the company from liability for gross negligence;" whilst in New York a different rule seems to be recognized.—*Indiana Central Railway v. Mundy*, 21 Indiana, 48; *Wells v. The N. Y. Central Railroad Company*, 24 N. Y. 181. But the decision in New York, above cited, was made by a divided court; and we cannot yield to the opinion of the majority the influence of binding authority, though it is doubtless entitled to great respect. Besides, the decisions in that State have not been uniform on the subject of the liability of common carriers. It seems also to have been, at one time, the doctrine of the English courts, that the common carrier might exempt himself, *by special contract*, from all responsibility whatsoever in regard to goods entrusted to him for transportation. In commenting upon the decisions of the English court upon this subject, Judge Redfield remarks, "It is surely not to be regarded as matter of surprise, that the legislature felt compelled to interfere, to restore something of the responsibility of common carriers." —2 Redfield on Railways, 94. As bearing upon the question involved, see, also, the following authorities: 2 Parsons on Contracts, 222, note *e; Ohio & Miss. Railway v. Muhling*, 30 Ill. 9; *Phil. & Reading Railway v. Derby*, 14 How. (U. S.) 483; *Steamboat New World v. King*, 16 How. (U. S.) 469–474.

It results from what we have said, that the grounds of demurrer to the second and third pleas were well taken, and that there was no error in the rulings of the court thereon.

2. The demurrer to the second and third pleas having been sustained by the court, the parties went to trial on the general issue. We have carefully examined the charges given by the court, to which appellant excepted, as well also as the charges requested by the appellant, which the court refused to give; and construing them in the light of the evidence, we hold, without entering into a minute consideration of them all, that there is no error in any of the rulings of the court thereon, prejudicial to the appellant.

As to the charge given by the court, and the charge requested by the appellant and refused, relating to the right of appellant to make reasonable limitations as to the extent of its liability for baggage entrusted to it for transportation, the purposes of this case require us to go no further, than to repeat what we have already said in substance—viz., that no such limitation can be made by any general notice—that it may be made by special contract, but that a common carrier can not exempt himself, by any such contract, from liability for the negligence, willful default, or tort, of himself or his servants; and this upon the familiar principle, that whatever has an obvious tendency to encourage guilty negligence, fraud, or crime, is contrary to public policy.—*Camden & Amboy Railway v. Baldauff*, 16 Penn. St. 67.

3. The only other rulings of the court excepted to, relate to the question, whether the appellant safely carried and delivered the baggage to the appellee, at Columbus, Kentucky. This was all the appellant was bound by its original undertaking to do; and whether it discharged the duty or not, was, substantially, a question of fact to be decided by the jury. They found the fact against the appellant, and we can not revise this finding of the jury on the evidence. The most we can do is to determine whether or not the court erred in its rulings upon the law applicable to the question; and if it did, we are satisfied the error was not prejudicial to, but in favor of the appellant.

We had some doubt, at first, whether the second charge

requested by the appellant, and refused by the court, should not have been given. A closer scrutiny, however, has relieved us of the doubt. It was a controverted question in the case, whether the baggage-master of the steamboat company was the agent of the appellee, to receive her baggage at the depot of appellant, or whether he was not the agent of appellant, by agreement with the steamboat company, to take charge of the baggage and deliver it at the boat. If he was not the agent of the appellee to receive her baggage, it was insisted that it had never been delivered to her at Columbus, pursuant to the original undertaking; and the burthen of proving such delivery rested upon the appellant. If the second charge had been given as asked, the court would, in effect, have withdrawn from the consideration of the jury the question of fact, as to whose agent the baggage-master of the steamboat company was, in receiving the baggage of appellee, or would have usurped the province of the jury by deciding, in effect, *that he was the agent of the appellee.*

For this, if no other reason, said charge was properly refused. If the baggage of appellee was not delivered to her, or her agent, at the depot of appellant, but was placed by appellant in charge of the baggage-master of the steamboat company, to be deliveved at the boat; and if such baggage-master was authorized, by agreement between appellant and the steamboat company, to receive upon the trains, or at the depot of the former, the baggage of through passengers, to be delivered at the boat; and if such was appellant's usual mode of delivering the baggage of through passengers travelling in that direction; then the larceny of the baggage by appellant's servants, by reason of which it was not delivered at the boat, but lost to the appellee, renders the appellant responsible for the loss, although appellee was travelling over the road of appellant on a free ticket, and although appellant might have discharged its original obligation by a proper delivery of the baggage at the depot.—*Richards v. The London, &c., Railway Company,* 62 Eng. Com. Law Rep. 837 ; *Butcher v. The London, &c., Railway Company,* 29 Eng. Law & Eq. Rep. 347.

The judgment is affirmed.