**PENNSYLVANIA GREYHOUND LINES, Inc., v. WELLS.**

No. 246.

Municipal Court of Appeals for the District of Columbia.

April 6, 1945.

Richard W. Galiher, of Washington, D. C. (Henry I. Quinn, of Washington, D. C., on the brief), for appellant.

Frederick A. Thuee, of Washington, D. C., for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

HOOD, Associate Judge.

The facts of this case are not in dispute. The mother of appellee purchased from appellant (hereinafter called the carrier) a ticket for the transportation of appellee (hereinafter called the passenger) and his baggage from Washington, D. C., to Concord, Massachusetts. When the carrier's bus arrived in Boston, Massachusetts, the passenger was informed that the carrier had no facilities for transporting him to Concord, and the passenger was compelled to make his own arrangements for transportation to Concord. After arriving at Concord he received a letter from the carrier advising him that his baggage, which had been checked from Washington to Concord, was being held at Boston, and inquiring if he wished the baggage forwarded by express, collect, or whether he desired to call for the baggage at Boston. The passenger arranged to have the baggage sent to Concord by express, and when it was received he discovered that clothing of a reasonable value of $180 was missing. The carrier stipulated that the missing articles were removed from the bags while they were in its possession and that the passenger was entitled to a verdict. The controversy between the parties related to the amount of the verdict. The passenger contended that the verdict should be for $180, the admitted reasonable value of the lost articles. The carrier contended that by reason of its published tariff regulations the agreed value of the baggage was $25 and that it was liable only for the proportionate loss or $17. The trial court sustained the passenger's contention.

The transportation here involved was interstate and the rights and liabilities of the parties are controlled by the Motor Carrier Act (49 U.S.C.A., Sec. 301 et seq.), which is Part II of the Interstate Commerce Act. And it is now settled beyond question that an interstate carrier may limit its liability for passengers' baggage by filing with its tariff schedules regulations to that effect. Boston & Maine Railroad v. Hooker, 233 U.S. 97, 34 S.Ct. 526, 58 L.Ed. 868, L.R.A.1915B, 450; Galveston, etc., R. Co. v. Woodbury, 254 U.S. 357, 41 S.Ct. 114, 65 L.Ed. 301. The carrier had duly filed rules and regulations applying to passengers' baggage and therein provided that baggage of a limited weight, "not exceeding Twenty-five ($25.00) Dollars in value" could be checked without additional charge. It was further provided that unless a greater value was declared, and charges paid for such excess

value, the value of the baggage "shall be deemed and agreed to be not in excess of" the specified sum of $25.

Tariffs lawfully established have the effect of law and are binding upon both passenger and carrier; and had the carrier been prepared to transport passenger and his baggage to the agreed destination the limitation of liability would be clearly applicable. Our sole question is whether the limitation applies when the carrier engages to transport the passenger and his baggage to a destination to which it cannot carry him and transports him only a part of the journey.

The limitation of liability, permitted by the law, is not separate and independent of the tariffs established by the published schedules but is a part of them. The published baggage tariff containing the rules and regulations, including the limitation of . liability, specifically states that it applies only to baggage service in connection with tickets sold over the lines of the carrier. Consequently the limitation of liability is effective only as a part of the published tariffs. And it is the published tariffs which the carrier relies upon here as having the force of law and regulating the rights and liabilities of it and the passenger. However, the carrier admits that it had no facilities for transportation to Concord and makes no claim that it had ever published tariffs applicable to · a trip from Washington to Concord. Indeed, in its brief, the carrier says that it did not deviate from the lines covered by its published tariff and that any agreement so to do would be unlawful and unenforceable. Yet it did contract to transport the passenger to Concord and partially fulfilled that contract, and the loss occurred during the course of partial completion of the contract. The carrier had no published tariff for the trip from Washington to Concord, and it cannot rely upon the limitation of liability in a tariff not applicable to that trip. It says that the loss occurred over the lines covered by its published tariff and therefore the limitation should apply. But the fact is that the passenger contracted for transportation to Concord, not to Boston, New York, or any other place, and while Boston is a comparatively short distance from Concord it is but one of many stops on the journey. The ticket sold had plainly marked upon it by the carrier in at least three different places that the passenger's destination was Concord, Massachusetts, and we do not see how published tariffs which do not extend to Concord can apply with reference to a trip to Concord. If the tariffs do not apply, then neither does the limitation of liability. Cf. Thomas v. National Delivery Ass'n, D.C.W.D.Pa., 24 F.Supp. 171; American Tobacco Co. v. Whitney, 291 Ky. 281, 163 S.W.2d 817; Mickey Finn Clothes, Inc., v. Yale Transport Corporation, 175 Misc. 242, 23 N.Y.S.2d 84.

Affirmed.