31 So.2d 563

**BIRMINGHAM TERMINAL CO. v. WILSON.**

**6 Div. 555.**

Supreme Court of Alabama.
March 20, 1947.

On Rehearing June 30, 1947.

Further Rehearing Denied July 31, 1947.

Benners, Burr, Stokely & McKamy and M. L. Taliaferro, all of Birmingham, for appellant.

Bibb, Blackmon & Bibb, of Anniston, for appellee.

FOSTER, Justice.

The question on this appeal relates to the correct amount for which judgment should be rendered.

Appellant is complaining that the amount of the judgment exceeds its liability. Appellant was the defendant, and will be here referred to as such; and appellee as plaintiff. The trial was on an agreed statement of facts.

Defendant was agent for several railroads entering Birmingham, and furnished the terminal facilities for them, including the "red cap" service, and including the Alabama Great Southern Railway, as one of such railroads. The railroad is not sued, but only the terminal company as a corporation. Its liability then was in the performance of the "red cap" service as agent for the railway company.

Plaintiff was an interstate passenger on the Alabama Great Southern Railway, and had with him two pieces of hand baggage, not checked, but on alighting at the terminal, this hand baggage had been set on the platform by the train porter, and plaintiff then pointed it out to a red cap, who was an agent of defendant. The red cap gave him two stubs, or checks for the two hand bags, each had printed on the back that the charge was ten cents for each parcel, and defendant's maximum liability was $25, unless a greater value was declared in writing, with an additional charge of ten cents for each $100, but not to exceed a total value of $500. One bag was delivered to plaintiff, but the other was not, and has not been accounted for or showing made as to what became of it. Its value was agreed to be $208.92, for which a judgment was rendered. Defendant claims it should not exceed $25 because of said stipulation on the check, and because of the provisions of the Local and Joint Passenger Carrier Tariff R. C. No. 2, as certified by the secretary of the Interstate Commerce Commission, as follows:

"Carriers parties to this tariff do not undertake to furnish red cap service generally or at all stations on their lines, or at all times at stations where such service is furnished. When and where and to the extent that red cap service may be furnished by the carriers for handling the hand baggage and other personal effects of passengers, except as indicated below, the carriers' charge for such service will be at the rate of ten cents for each piece so handled, except that in the handling of baggage and other personal effects for parties the charge of ten cents per piece will apply up to and including ten pieces, and the charge for more than ten pieces will be at the rate of $1.00 per baggage truck load. * *

"Carriers will not accept a greater liability than $25.00, per bag or parcel, or the actual value of the bag or parcel if said actual value is less than $25.00, for each bag or parcel handled by red caps under the provisions of this tariff, unless a greater value is declared in writing by the passenger. If a greater value is so declared in writing by the passenger, an additional charge of ten cents per bag or parcel will be made for each $100.00 or fraction thereof above $25.00 so declared. Any bag or parcel which is declared by the passenger to have a value in excess of $500.00 will not be accepted for handling by red caps under the provisions of this tariff. 'Bag or parcel' as used in this tariff means a bag or parcel including its contents."

It appears the charges and limit of liability stipulated on the check conform to those features of the Interstate Commerce Commission tariff, supra.

Title 49 U.S.C.A. § 20 (11) contains certain provisions to the effect that the carrier shall be liable for the full actual loss or damage caused by it or by a connecting carrier, notwithstanding any limitation of

liability as to value in any receipt or bill of lading, provided that the provisions against a limitation of liability as to value shall not apply to *baggage* carried on passenger trains, and the tariff schedules shall contain specific reference to the differential based upon declared values.

Plaintiff contends that the term "baggage" in that connection means property checked for transportation as incidental to passenger carriage and not to hand baggage carried with the person of the passenger. The first case cited to support that contention is Morgan v. Woolverton, 203 N.Y. 52, 96 N.E. 354, 36 L.R.A.,N.S., 640. That was a suit against a transfer company engaged in the business of taking up from the railroad company the baggage of the passengers, and delivering it in New York, where it may be directed. There was not shown to be any connection between the transfer company and the railroad company. For the loss of the baggage a local state law was controlling fixing restrictions on the liability of a common carrier and railroad for loss or damage to property carried as baggage. This property had been checked by the railroad entering New York, and the transfer company took up that check and issued its own. The court did not make an interpretation of baggage which would exclude hand baggage, but defined it as any property transported as an incident to the transportation of the owner as a passenger. And since the terminal company did not transport the owner, but only his baggage the local law making said limitation did not apply.

Another case is Union Pacific Railroad v. Grace, 22 Wyo. 452, 143 P. 353, L.R.A. 1915B, 608. In that case a porter carried to the coach door a passenger's hand baggage, and deposited it in the vestibule from which it appears to have been stolen. The question was whether the evidence showed negligence. It was held that the evidence showed what the porter did and it did not show negligence, and therefore that plaintiff had no cause of action. There was no definition of baggage.

The next case cited is Hasbrouck v. New York Central & H. R. Railroad, 202 N.Y. 363, 95 N.E. 808, 35 L.R.A.,N.S., 537, Ann. Cas.1912D, 1150. The question was likewise one of negligence as a bailee in the manner in which a porter handled the hand baggage of a passenger. But it also holds that a provision on a passenger's ticket that the company assumes no risk over $100, except by special contract, applies only to baggage regularly checked and not to hand baggage retained in possession of the passenger, except temporarily in getting on and off the train. But as to hand baggage the carrier was liable for jewelry and money in a suitcase carried as hand baggage missing from it when returned to her by a trainman who had taken it to assist her off the train, since there was no limitation by statute or regulation of the road. The court held that the jewelry and money were hand baggage, and must be considered personal luggage. This was not controlled by the federal transportation acts.

Plaintiff therefore contends that title 49 U.S.C.A. section 20 (11), part of the transportation act whereby there may be a limit to liability for the amount of the loss of baggage carried on passenger trains, does not apply to hand baggage or luggage carried by a passenger on or about his person while traveling.

The liability of the carrier in respect to hand baggage kept with the passenger on the train depends upon whether it becomes entrusted to the care of the carrier, or upon who has the custody and control of the baggage. 13 C.J.S., Carriers, §§ 867, 869, pp. 1689, 1692; 5 R.C.L. 176, section 795; 10 Am.Jur. 464, section 1770.

To the extent that it is discharging public business, the carrier cannot by contract be exempt from liability for its negligence, Mobile & Ohio Railroad v. Hopkins, 41 Ala. 486, 94 Am.Dec. 607; but this may be done in respect to other business of the carrier. McKinney v. Mobile & Ohio Railroad, 215 Ala. 101, 109 So. 752, 48 A.L.R. 998; Life & Casualty Ins. Co. v. Porterfield, 239 Ala. 148, 194 So. 173.

This principle in respect to an exemption by contract from the consequence of negligence in the performance of public business applies to this defendant when acting independently. Birmingham Terminal Co. v. Thomas, 207 Ala. 363, 92 So. 803. But it has been consistently held that valuation

agreements may be sustained without the aid of a statute on principles of estoppel and in carefully restricted cases where choice of rates was given, and where the rate was tied to the release. Union Pacific Railroad v. Burke, 255 U.S. 317, 41 S.Ct. 283, 65 L.Ed. 656; Franklin v. Southern Pacific Railroad, 203 Cal. 680, 265 P. 936, 59 A.L.R. 118; Hart v. Pennsylvania Railroad, 112 U.S. 331, 5 S.Ct. 151, 28 L.Ed. 717; Boston & Maine Railroad v. Piper, 246 U.S. 439, 38 S.Ct. 354, 62 L.Ed. 820, Ann.Cas.1918E, 469.

But section 20 (11), supra, now gives validity to such a regulation when a choice of rates is given and contained in a published tariff on file with the Interstate Commerce Commission, even though the passenger has no knowledge of it. Galveston, H. &·S. A. Railroad v. Woodbury, 254 U.S. 357, 41 S.Ct. 114, 65 L.Ed. 301; Boston & Maine Railroad v. Hooker, 233 U.S. 97, 34 S.Ct. 526, 58 L.Ed. 868, L.R.A.1915B, 450, Ann.Cas.1915D, 593; Pennsylvania Greyhound Lines v. Wells, D.C.Mun.App., 41 A.2d 837. Those cases relate to tariff and regulations applicable to baggage carried on check in the baggage car over which the carrier has control as an insurer, and in accordance with tariffs relating to such service.

In the case of Franklin v. Southern Pacific Railroad, supra, the court was dealing with red cap service wherein a tariff regulation was published with the Interstate Commerce Commission as follows: "Where red cap porter service is provided, hand baggage will be handled without charge by red cap porters to and from trains of Southern Pacific Railway Company. Liability upon hand baggage handled by red cap porters will be limited to $25.00." It will be observed that no choice of rates is there provided for in relation to liability for full values. The effect of section 20 (11), supra, as it appeared in the second Cummins Amendment, which is the same as now so far as here material was to authorize interstate carriers to limit liability by published tariffs (Galveston, H. & S. A. Railroad v. Woodbury, supra), or by contract (Union Pacific Railroad v. Burke, supra), where a choice of rates is given and the rate is tied to the release. In

the Franklin case, supra, it was held that the tariff regulation as published did not give such a choice of rates, and was not like the regulations filed with the Interstate Commerce Commission as to checked baggage which did give such a choice. The question then was whether there was any difference in this respect between hand baggage and checked baggage in a case where no graduated scale of valuation is allowed. The court then observed [203 Cal. 680, 265 P. 940]:

"We can think of no reason why there should be any difference between baggage in the custody of a porter as a servant of the carrier, and lost through his negligence, and baggage in the custody of a baggageman, likewise a servant of the carrier, and lost through his negligence. It seems clear on principle that the case before us is the same as though the baggage had been tendered for checking and lost in the process of checking or the shipper had been denied the right to secure full protection and had been given no alternative but to accept the limit of valuation against negligence placed thereon by the carrier, which, as above shown, is illegal from its inception. This is not a case of joint control with the passenger nor a case where the passenger's conduct or negligence in any way contributed to the loss. It is a clear case of loss by negligence where the control was exclusively in the carrier, who had allowed no opportunity to the shipper to secure better protection from loss or damage."

Plaintiff was allowed to recover the full value of her hand baggage because the published regulation limited the liability to $25, "with no opportunity to secure better protection from loss or damage." The opportunity to choose between rates on the basis of values tied to them is the controlling factor in determining the validity of the regulation. See, 13 C.J.S., Carriers, § 875, notes 77 et seq., p. 1701; 10 Am.Jur. 465, section 1771, and notes; Culbreth v. Martin, 179 N.C. 678, 103 S.E. 374.

Section 20 (11), supra, refers in this respect in terms to "baggage carried on passenger trains." Undoubtedly a tariff which expressly applies to baggage which is check-

ed does not apply to hand baggage not checked in carriage. Atlantic Coast Line Railroad v. Barksdale, 32 Ga.App. 643, 124 S.E. 362.

But the tariff and regulation filed in respect to the instant case apply expressly to red cap service and to a passenger's hand baggage, and contain a choice of rates affected by declared valuations.

In view of the principle that the carrier is liable for the negligence of its servants in performing service relating to hand baggage by its red caps, or sometimes for loss without negligence, we perceive no reason why section 20 (11), supra, should be limited to checked baggage. No authority has done so which we can find.

We call attention to the fact that this suit is not against the carrier, and that defendant independently considered was presumably not a common carrier of passengers or property by railroad. Pennsylvania Railroad v. Public Utilities Comm., 298 U.S. 170, 56 S.Ct. 687, 80 L.Ed. 1130; title 49 U.S. C.A. § 1 [1]), and therefore in respect to its independent operations is not benefited by section 20 (11), supra, but was an agent of such a common carrier, and in conducting this operation was acting as such agent in the line and scope of its authority.

An agent is liable for his torts whether his principal is liable or not. 3 C.J.S., Agency, § 220, p. 129; Finnell v. Pitts, 222 Ala. 290, 132 So. 2; Elmore v. Fields, 153 Ala. 345, 45 So. 66, 127 Am.St.Rep. 31; 59 Corpus Juris 146, section 228. If he is acting in the line and scope of his authority, they are both liable for such torts. But what the principal can do personally he may in general do by an authorized agent, and the agent would be justified in doing by authority of the principal that which the principal could lawfully do personally. 3 C.J.S., Agency, § 220, note 89, p. 130.

It may be conceded that if the passenger receives from the train porter his hand baggage and takes personal possession of it, or delivers it to an independent transfer agency, the railroad has discharged its duty as to such baggage, though for certain purposes the passenger may still be treated as such. But where the passenger construc-

tively received it from the train porter by delivering it to another agent of the carrier for a purpose within the line and scope of such agency, and as a part of the transportation by the carrier, the duty of the railroad as an interstate carrier was not terminated. Mobile & Ohio Railroad v. Hopkins, supra.

There was here no delivery to an independent transfer company as in Morgan v. Woolverton, supra, and referred to in Mobile & Ohio Railroad v. Hopkins, supra, but to another agent of the carrier to be carried to another place at the terminal for receiving and delivering hand baggage so transported by the carrier's authorized agent.

The agent therefore had the benefit of the legal protection afforded to the principal, and being such agent its liability was subject to the principles of law controlling the liability of the principal.

The cases cited by plaintiff are those relating to a situation where the transfer or terminal company was independent of the carrier and not its agent. The difference between the two is controlling, and illustrated in Henderson & Walters v. Atlantic Coast Line Railroad, 200 Ala. 393, 76 So. 309, and in Mobile & Ohio Railroad v. Hopkins, supra.

The red cap in the instant case was acting in the line and scope of his authority as the carrier's agent, and not as plaintiff's independently authorized agent, so that although the defendant was not engaged in the transportation of passengers by railroad, to which title 49, U.S.C.A., applies, it was acting as the agent of a carrier which was so engaged. Therefore the performance of its duties as such agent was subject to the provisions of that statute.

We see no reason why the published rules and regulations as to the red cap service were not authorized by section 20 (11), supra, and were not admissible, and controlling, although the status of the situation did not arise to the dignity of a contract, nor were the elements of estoppel present. Kravitz v. Parking Service Co., 29 Ala.App. 523, 199 So. 727, certiorari denied 240 Ala. 467, 199 So. 731; Denver Union Terminal R. Co. v. Cullinan, 72 Colo. 248, 210 P. 602, 27 A.L.R. 154; Dodge v. Nashville,

C. & St. L. R. Co., 142 Tenn. 20, 215 S.W. 274, 7 A.L.R. 1229.

We think the judgment should have been rendered for $25.00. It will be so modified and affirmed.

Modified and affirmed.

GARDNER, C. J., and BROWN and STAKELY, JJ., concur.

### On Rehearing.

PER CURIAM.

Our attention is called to the fact that the Local and Joint Passenger Carrier Tariff R.C. No. 2 was not admitted in evidence, but that the court sustained the objection which the plaintiff made to it as evidence in the case. We are holding that this was reversal error, and that it should have been admitted in evidence. In modifying and rendering the judgment on this appeal we considered the agreement as meaning that if we hold that the tariff is admissible we should treat it as a part of the evidence on the appeal. We find now that the agreement does not justify such an interpretation, but the only error on the appeal is in the refusal of the court to admit the tariff in evidence, for which there must be a reversal of the judgment, and not being in evidence it does not justify us in proceeding to render a judgment under Title 7, § 810, Code 1940.

We, therefore, order the case to be restored on the rehearing docket. And upon consideration the judgment which we rendered be and the same is modified so that instead of rendering a judgment for the plaintiff for $25, we order that the judgment of the trial court be reversed and the cause remanded to that court for another trial.

Rehearing granted; judgment reversed and cause remanded.

GARDNER, C. J., and BROWN, FOSTER, and STAKELY, JJ., concurring.