## The American Steamship Company *versus* Bryan.

1. An ocean steamship company is not responsible as a common carrier or an innkeeper for the baggage of a passenger which he keeps in his own possession in his state-room, but must answer in such cases for its negligence, like other bailees for hire.

2. B., a passenger on the defendant's steamship, had his baggage in his state-room, which was kept open, according to the custom of the vessel, for purposes of ventilation. The state-room opened into a passage way, which in turn opened into the cabin. A light was always kept burning, and a watchman on duty at night in the cabin. The duty of keeping watch was performed by the stewards and waiters of the vessel and was in addition to their daily duties. The watchman on duty was required by the rules to report every hour to the officer on the bridge. B.'s two valises were stolen from his room while he was asleep. It appeared that on the night in question the watchman, when reporting at the bridge, had stopped to get a cup of coffee; and that state-rooms on both sides of the cabin were robbed on the same night; there was slight evidence tending to show that the theft was committed by a passenger. In an action by B. against the company to recover the value of his baggage, the jury found a verdict for the plaintiff, subject to a reserved point as to whether there was *any* evidence of negligence. Judgment was entered below on the reserved point for the plaintiff: *Held* (AGNEW, C. J., and PAXSON, J., dissenting), that there was evidence to go to the jury of negligence.

February 7th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county*: Of January Term 1877, No. 50.

This action was brought by Walter H. Bryan against the American Steamship Company, to recover the value of certain personal effects alleged to have been stolen from his state-room while a passenger on one of the defendant's vessels.

At the trial before Lynd, J., these facts appeared: The plaintiff occupied, by himself, a state-room opening upon a passage-way or alcove, which, in turn, opened into the cabin. He had never had a key to his room, and it was customary, for purposes of ventilation, to leave the state-room doors open at night. He would have been furnished with a key if he had asked for one. A light was always kept burning in the cabin, and a watchman was always on duty there at night. This was the rule of the ship, and was in accordance with the Act of Congress of February 28th 1871 (Rev. Stats., § 4477). The duty of keeping watch in the cabin was performed by the stewards and waiters on the vessel, and was in addition to their regular daily duties. Besides this, the officers of the vessel were in the habit of visiting the cabin to see that the watchmen attended to their duties. One of the rules of the vessel required that the watchman on duty should report every hour during his watch to the officer on the bridge. On the night in question the watchman, who was one of the stewards, while making one of his hourly reports to the officer on the bridge, stopped at the cook's galley to get a cup of coffee. The property stolen consisted of

[American Steamship Co. *v.* Bryan.]

wearing apparel, &c., contained in two valises, and was taken from the plaintiff's state-room while he was asleep. It appeared that three other state-rooms were robbed on the same night, and that two of these were on the opposite side of the vessel from the plaintiff's state-room. It did not appear clearly who committed the robbery, though there was evidence that one of the passengers, named Sprungli, who appeared to be a professional thief, and who had occupied a state-room across the alcove from the plaintiff's, was arrested on suspicion, but was, after three months' confinement, discharged for want of evidence to connect him with this transaction.

The court refused to charge as requested by the defendant (though substantially affirming the same principles in the general charge).

1. "That no liability as carriers exists on the part of the defendant for baggage of a passenger not delivered into the custody of the defendant," and 2, that "as to articles of baggage retained by the passenger in his own custody and under his control, no liability exists for their loss or theft, without wilful negligence on the part of the carrier;" and charged as follows :—

* * * "I instruct you, that as to ordinary wearing apparel and ornaments of dress required for daily use, which the passenger takes into his own state-room, the company does owe the duty of protection to the extent of ordinary care against loss by theft. The plaintiff contends that the thief was one who had access to the saloon, and that if it had been lighted and guarded properly it could not have happened.

" The defendant contends that it was done by a passenger named Sprungli, who had the room on the opposite side of the passage-way to the plaintiff.

" You must ascertain how this theft was perpetrated, for on this depends the question of negligence.

" The negligence set up by the plaintiff was, that ordinary care and caution were not used in lighting and guarding the saloon, and that from the fact that state-rooms upon opposite sides of the saloon were robbed, the theft must have been committed by some one who was allowed to roam at will in the saloon.

" The duty was that of ordinary care and caution. If the lighting and watching of the saloon was such as an ordinarily prudent person would have adopted, then there was no negligence.

" If you find, however, that the robbery was committed by this man Sprungli, who had only to step out of his own door across the alcove into the room opposite, you may then find that no care or caution on the part of the steamship company could have prevented it. If Sprungli stole it, and it could not have been prevented by

any ordinary care on the part of the defendant, then your verdict should be for the defendant."

The question as to whether there was any evidence to charge the defendant with negligence was reserved for the court in banc. There was a verdict for the plaintiff in $586.71. Judgment was afterwards entered on the reserved point for the plaintiff, whereupon the defendant took this writ of error, assigning for error the refusal of the defendant's points, as given above, and the entry of judgment for the plaintiff on the reserved point.

*Morton P. Henry*, for the plaintiff in error.

*R. P. White*, for the defendant in error.

Mr. Justice SHARSWOOD delivered the opinion of the court, March 5th 1877.

The learned judge below substantially affirmed the points made by the plaintiffs in error—that they were not responsible as common carriers or innkeepers, but that they must answer for negligence as other bailees for hire. To this ruling certainly the plaintiffs could take no just exception. He left the case to the jury, reserving the question whether there was any evidence of negligence. The jury found that there was negligence, and the court in banc—after the death of the learned judge before whom the cause had been tried—entered judgment upon the verdict.

Were there any facts in evidence tending to show want of ordinary care which, in the judgment of any reasonable person, might be so considered? The question is not whether the court considers the facts to amount to negligence—what they would have decided sitting as jurymen—for that would entirely usurp the province of the jury. Whether there is any evidence is for the court; whether and to what extent the witnesses are to be believed, and whether the circumstances are sufficient to satisfy the mind in finding the fact in issue, is for the jury.

The jury in this case might very well conclude that the theft had been perpetrated by an employee of the company. Valises are not articles which can easily be secreted by a passenger, or thrown overboard after they have been rifled, without observation. It may very easily be accomplished by a servant on board acquainted with all the holes and corners of the vessel. The baggage of the passengers is taken on to the wharf immediately on arrival, and is open and subject to inspection. The servants remain on board, and can watch their opportunity to slip such things ashore or throw them overboard. One of the passengers on this occasion was suspected, arrested and detained a considerable time and then discharged, as no evidence could be produced against him.

[American Steamship Co. *v.* Bryan.]

A watch was kept during the night in the saloon; but was it of such a character as to amount to the ordinary diligence which the company owed to their passengers? This surely was a question for the jury. It was not a watchman, who by taking his natural rest during the day might be expected to be watchful at night. The stewards or waiters on board took their turns at this duty. As the means of securing their vigilance, they were required every hour to report to the officer on deck, and of course for this purpose had to leave their post. They might be expected to take some time to do this, to loiter on their way, to stop and have a few words with the officer about the weather and the speed of the vessel—and on the morning the larceny was committed it appeared that the steward on watch had stopped on his way at the cook's galley and drunk a cup of coffee. There was ample time in the interval, as the fact showed, for some one to enter the state rooms of the defendant and other passengers and carry off several valises. Was this ordinary and proper diligence? Could not some other mode have been adopted of watching the watchman, than this which might leave the saloon entirely unguarded at considerable intervals? In many of our public institutions a very simple electrical machine registers the rounds of the watchman during the night at the appointed times. We do not say that every passenger ship should have and use such a register, but we do say it was for the jury to determine whether this apparent deficiency in the mode of watching the saloon might not have been remedied. Even as a precaution against fire they might well argue that the continuity of the watch was essential. A fire might begin from accident or carelessness in one of the state-rooms, and make such headway in five minutes before discovered that the ship would be imperilled. On the whole we are of opinion that there was evidence to go to the jury, and that the court committed no error in entering judgment in favor of the plaintiff below on the reserved point.

Judgment affirmed.

PAXSON, J., filed a dissenting opinion, in which AGNEW, C. J., concurred.