# Springer *v.* Pullman Company, Appellant.

*Negligence—Carriers—Sleeping car companies—Loss of personal effects retained in owner's possession—Proximate cause—Evidence.*

1. Where baggage is entrusted for transportation to the exclusive possession of a carrier, the carrier becomes insurer against all loss except such as results from the act of God or the public enemy; but for the loss of personal effects which the passenger retains in his own possession, liability only attaches when the loss is shown to have resulted from the carrier's negligence in failing to use reasonable care in the protection of the passenger's property. This rule is applicable to sleeping car companies.

2. In an action for damages against a sleeping car company for the loss of a valise which plaintiff retained in his possession while occupying a berth on defendant company's car, it appeared that plaintiff on entering placed the satchel under his berth; that when he awakened next morning the satchel was missing; that when he retired the upper berth in his section was unoccupied; and that in the morning he learned from the porter that this berth had been occupied by a passenger who must have got aboard at an intermediate point after plaintiff had retired and who had evidently left the car at an intermediate point while plaintiff was asleep. There was no evidence explaining how the satchel disappeared; and the only evidence tending to show negligence on the part of the defendant's servants was the testimony of· another passenger to the effect that when he boarded the train, after plaintiff had retired, he gave his grip to the porter who was then on the platform, and that later on during the night he saw the porter in the wash room of the car. The length of time the porter was absent from his post did not appear; nor that when absent that his post was not filled by the conductor. No question was made as to the sufficiency of the rules and regulations of the company being sufficient to meet the requirements of ordinary care. Held, that the evidence was insufficient to carry the case to the jury and the motion for judgment *non obstante* should have prevailed. Steamship Co. v. Bryan, 83 Pa. 446, discussed and followed.

Argued October 20, 1911. Appeal, No. 148, Oct. T., 1911, by defendant from judgment of C. P. No. 2, Allegheny Co., April T., 1908, No. 1143, on verdict for plaintiff in case of Carl Springer v. The Pullman Company.

Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover value of personal effects, lost in transit. Before HAYMAKER, J.

The facts are stated in the opinion of the Supreme Court.

Verdict for plaintiff for $2,000 and judgment thereon. Defendant appealed.

*Error assigned,* among others, was in refusing motion for judgment *non obstante veredicto.*

*Richard H. Hawkins,* of *Dalzell, Fisher & Hawkins,* with him *Howard T. Wilcoxen,* for appellant.

*Churchill B. Mehard,* with him *W. H. Falls* and *Samuel S. Mehard,* for appellee.

OPINION BY MR. JUSTICE STEWART, January 1, 1912:
The damages here sought to be recovered are not for loss of baggage which the passenger had entrusted for transportation to the carrier's exclusive possession, but for the loss of personal effects which the passenger retained in his own possession while occupying a place in the sleeping car. The distinction with respect to the carrier's liability in the two cases is well established. In the one, where the baggage is delivered into the possession of the carrier, the carrier becomes insurer against all loss except such as results from the act of God or the public enemy; in the other, liability only attaches when the loss is shown to have resulted from the carrier's negligence in failing to use reasonable care in the protection of the passenger's property. This distinction is too familiar to require any citation of au-

thorities in its support. It results from this establish-
ed rule of law, that mere proof of loss of baggage which
is taken by a passenger into a sleeping car, does not
make out either an absolute or *prima facie* case of liabil-
ity against the car company. Our own case of American
Steamship Company v. Bryan, 83 Pa. 446, although the
action there was against a steamship company, while
here it is against a sleeping car company, is quite as il-
lustrative of the principle as any of the cases called to
our attention, and more authoritative here since it is an
adjudication of our own court. In that case the claim
was for loss of personal luggage which the passenger
had not entrusted to the steamship company, but which
he had taken with him into his state room and which
had been stolen therefrom. On the trial of the case the
jury was instructed that the company, with respect to
this particular luggage, was not responsible as common
carrier, that is to say, insurer, but was answerable only
for negligence; and the one question in the case was
whether the company had exercised the ordinary care
and caution which it owed to its passengers. This court
on review of the case entered into a full and careful con-
sideration of the evidence, to determine the one question
whether there was any evidence of negligence, that is,
want of reasonable care and diligence, that warranted a
submission to the jury; and the final determination of
the case rested on that one question alone. In the latest
New York case on the subject, Adams v. New Jersey
Steamboat Co., 151 N. Y. 163, the court puts the liability
of the steamboat company in such cases on the same
footing with that of the innkeeper, distinguishing the
carriage by the steamboat company from that by sleep-
ing car, but that only gives greater emphasis to what
was decided in American Steamship Co. v. Bryan,
supra. If in Pennsylvania we apply to steamship com-
panies a rule which holds them liable only for loss of
luggage through negligence on their part, for so much
the greater reason should the rule apply to sleeping car

companies. Now what are the facts in this case? The plaintiff having secured in New York City his transportation over the Pennsylvania Railroad to New Castle, Pa., purchased a lower berth in one of the Pullman sleeping cars which went to make up the train on which he proposed to travel. When entering this car at Jersey City he was carrying two pieces of luggage, a suit case and a satchel. The latter contained personal jewelry which he valued at $2,203, and wearing apparel of the value of $63.50. Both pieces of luggage he gave to the porter, who placed the suit case underneath the seat occupied by the plaintiff, and the satchel on the seat, because too large for the space under the seat. Plaintiff retired about the time the train reached Trenton. Before retiring he opened and examined the satchel, found its contents safe and undisturbed, and then placed it under the berth as far as it would go. Its size preventing it going entirely under the seat, he left it protruding in the aisle, but to what extent does not appear. Plaintiff testified that he soon thereafter fell asleep and remained asleep until the train next morning was approaching Greensburg, when he arose to find that the satchel was missing. Having been continuously asleep he knew nothing as to occurrences during the night. When he retired at Trenton the upper berth in his section was unoccupied and not made up. He was informed the next morning by the porter, that this had been occupied by a passenger who must have got aboard at an intermediate point after plaintiff had gone to sleep, and who had evidently left the car at an intermediate point while plaintiff was asleep; for it was unoccupied when plaintiff awaked. Diligent but unrewarded search was made for the satchel through the entire car, all the baggage in the car undergoing examination. Plaintiff himself testified to no fact or circumstance which could in the remotest way explain the disappearance of the satchel. If the case rested on his testimony alone, it could hardly be contended that there

was sufficient evidence of negligence to warrant a submission to the jury, except as we were to apply the rule of res ipsa loquitur, which in effect would be to hold the company an insurer against theft. From his own testimony it appears that the company adopted the same precaution against loss of luggage which like companies every where adopt; it had placed in charge of the car a conductor and a porter whose duty it was to be watchful and vigilant. The testimony of plaintiff does not suggest a suspicion that either of these appropriated the satchel, nor for that matter does any of the evidence; nor does plaintiff's own testimony involve either in any negligence whatever. On this branch of the case we have the testimony of a single witness. When the train reached Philadelphia a Mr. Patterson, an acquaintance of plaintiff, became a fellow passenger occupying the berth immediately opposite the plaintiff's. It is the testimony of this witness that is relied upon as showing negligence on the part of the porter. His testimony adds nothing by way of explaining how or in what manner the satchel disappeared; the sole purpose for which it was offered was to show that the porter had not been continuously and uninterruptedly in the aisle of the car or some corresponding position where he could have had a view of the car from the one end to the other, between Jersey City and Greensburg. The witness testified that when he boarded the train at Philadelphia, as he recalled the circumstances, he gave his grip to the porter who was then on the platform. He was asked if he had any recollection of seeing the porter elsewhere during the night, and he replied, "Why, I believe in the wash room." This question followed, "Do you remember seeing him more than once?" The answer was, "No, I do not." Outside this testimony there is absolutely nothing in the case upon which a charge of negligence could rest. The evidence that in the morning the passenger's shoes were found to have been polished during the night does not connect the porter with the polishing, and if it

did, it fails to show that when he polished them he was not in a place where he could have had a full view of the car. Were we to concede, which we cannot, that reasonable care and vigilance to protect against loss of baggage requires that the porter should throughout the entire route be standing as sentry in the aisle of the car, or constantly moving back and forward through the car as guard or watchman, even then the testimony of Mr. Patterson would be insufficient to establish negligence. The negligent act relied on must have some relation to the loss, and it must appear to have been the proximate cause. Was the jury to be left to infer that plaintiff's satchel was stolen while the porter was on the platform at Philadelphia admitting passengers to the car or to infer that it was stolen while he was in the wash room? The length of time the porter was in either place does not appear. For all that does appear it may have been but momentarily. Not only so, but as against an intruder it was quite as much a protection to passengers for the porter to be on the platform with the rear door of the car fastened, as it would be were he in the car. If the rear door were unlocked when this occurred it was for the plaintiff to show the fact. Plaintiff testified that beside the porter there was a Pullman conductor on the car. Was the jury to be left to infer that while the porter was on the platform or in the wash room no employee of the company was exercising surveillance of the car? The witness Patterson must have encountered the conductor as well as the porter. If his testimony was introduced to show negligence because of the porter being on the platform when he entered the car, why was he not interrogated as to conditions inside the car with respect to watchfulness and supervision when he entered it? We may not presume negligence on the conductor's part, and yet the porter being subordinate to him, if it were negligence in the porter to be on the platform, it would be the conductor's negligence in permitting it, except as he took upon himself the duty of the

porter within the car. Can there be any reasonable inference from the evidence that he did not do so? In the case of American Steamship Co. v. Bryan, supra, the facts which were adjudged sufficient to warrant a submission of the question of negligence were much stronger than we have here, and yet two of the judges dissented from the decision of the court. In that case it was shown that under the rules of the company a watch was kept during the night in the saloon of the boat by the stewards or waiters taking turns. To secure their vigilance they were required to report every hour to the officer on deck, and of course for this purpose they had to leave their posts. The court held that it was a question for the jury to say whether this amounted to ordinary vigilance which the company owed the passengers, inasmuch as the watchmen might be expected to take some time to make such report, "to loiter on their way, to stop and have a few words with the officer about the weather and the speed of the vessel." It there appeared that on the morning the larceny was committed the steward had stopped on his way at the cook's galley and there drank a cup of coffee. "There was ample time in the interval as the fact showed," says Mr. Justice Sharswood, in his opinion, "for some one to enter the state room of the plaintff and other passengers and carry off several valises." Was this ordinary and proper diligence? he inquires; could not some other mode have been adopted of watching the watchmen than this which might leave the saloon entirely unguarded at considerable intervals? No such questions arose in this case; not only was there no evidence here as to the length of time the porter was absent from his post, or that when absent his post was not filled by another, but no question was made as to the rules, regulations and requirements of the company being entirely sufficient to meet the requirements of ordinary care. The only negligence asserted was that of the porter in having been seen once in the wash room and once when the car was at rest, upon the platform.

In view of all the facts of the case it seems impossible that the theft, for theft it undoubtedly was, was committed by an intruder. The person who took the satchel must have been either a passenger or an employee. It could hardly have been one of the latter class, since their attention had not been called in any way to the fact that the satchel contained valuables of any sort. Why should one of them without opportunity of knowing the contents, select for plunder the one satchel in the room that carried such rich treasure? We may assume from the unusual value of its contents that this satchel was the richest, and so far as appears it was the only one disturbed. The evidence affords a more reasonable explanation. It does not appear how many passengers left that car that night at the intermediate stopping places; but the evidence shows that some did. To any one so leaving the car the plaintiff's satchel was exposed, since it protruded into the aisle. Certainly such a one had larger opportunity to take the satchel, and escape with it undetected, than any passenger who remained in the car, or any servant; and the evidence to our mind makes it most likely that it was taken in this way. If it was so taken, will it be contended that that was an occurrence which ordinary vigilance on the part of the company would have prevented? To so hold would be to impose on the company the duty of seeing that no passenger left the car with any baggage except his own, which again would be virtually making the carrier an insurer, besides subjecting the passengers to a scrutiny and surveillance which the ordinary traveler would have a right to resent. We cannot think that the ordinary care exacted of the carrier requires any such officious interference as this. On the whole we are of opinion that the evidence of negligence as the proximate cause of the plaintiff's loss was not sufficient to warrant a submission of the case to the jury. As the case was submitted the jury was left to conjecture that which the plaintiff was required to prove. This being our con-

clusion, it is unnecessary to consider and decide the several other questions which have been raised. The second specification of error complains of the refusal of the court to enter judgment non obstante.

This assignment is sustained and the judgment is accordingly reversed.