ST. LOSKY *et al. v.* DAVIDSON *et al.*

A pledge is a bailment which is reciprocally beneficial to both parties, and therefore the law requires of the pledgee the exercise of ordinary diligence in the custody and care of the goods pledged, and he is responsible for ordinary negligence.

When the bailors agreed that the goods should be stored in a certain warehouse at their risk and expense, *Held,* that their removal by an agent of the bailees, though without their knowledge, charged them for the safe keeping of the goods after their removal, and that they were responsible for any damage to said goods caused by their removal to an insecure or improper place of storage.

APPEAL from the District Court of the Twelfth Judicial District.

The plaintiffs brought their action for damages for injuries occurring

to certain cases of cigars, pledged to defendants as security for a loan, by the negligence of defendants in storing the same. The facts of the case are as follows:

The plaintiff pledged to defendants a lot of cigars to secure certain notes. The written memorandum, signed by the plaintiff, contained the following words: "We have this day delivered, as collateral security for the above note, to the said Emanuel Berri, eighty-two cases of cigars, who has stored the same in the Bay Warehouse at our risk and expense."

The cigars were deposited in the Bay Warehouse as the property, and subject to the order of Berri, one of the defendants. Afterwards, on account of some injury to the warehouse, the keeper, without the order or knowledge of the defendants, removed them to another place which was damp and unfit for the storage of such goods, and in consequence of the removal, the cigars were damaged and their value greatly impaired. The Court below non-suited the plaintiffs.

Plaintiffs appealed.

*Crittenden & Inge* for Appellants.

The contract between the plaintiffs and defendants was one of pledge or pawn, and the pledgee was bound to use ordinary diligence in the care of the pledge, and was liable for ordinary neglect in keeping it. Story on Bailments, §§ 286, 332.

Common or ordinary diligence is the care which every person of common prudence, and capable of governing a family, takes of his own concerns. Ordinary negligence is the want of ordinary diligence. Ib., §§ 11, 17.

What constitutes ordinary diligence may also be materially affected by the nature, the bulk, and the value of the articles. Ib., § 15.

The pledgee makes himself liable for all losses and accidents whenever he has done any act inconsistent with his duty, or has neglected or refused to perform his duty. Ib., §§ 341, 342.

In every case where the pledge has suffered any injury by the default of the pledgee, the owner is entitled to a recompense in proportion to the damages sustained by him. Ib., § 351.

The words "at our risk and expense," do not at all vary the legal effect of the contract, nor change the rights and duties of the parties. They merely express what the law would imply, and were introduced from excess of caution. In all cases of pledge without any express stipulation to that effect, the goods pledged are at the risk and expense of the owner to this extent, that the necessary expenses of their care are chargeable to the owner, and if they are lost by casualty or other unavoidable accident, or perish through their own intrinsic defects, without the default of the pledgee, the loss falls upon the owner. Ib., §§ 306a, 339, 363.

If any greater effect were to be given to these words, they would protect the pledgees against their own default, release them from all obligation to use any care or diligence in keeping the goods, and release

them, in advance, from all liability for the grossest negligence, amounting even to fraud.    It cannot be supposed that the parties had any such intention, and such a construction cannot be maintained.

But here the injury to the goods was through the default of the defendants.    It was the consequence of their permitting them to be removed from the warehouse agreed upon, and deposited in another which was an unfit one for the purpose, and where the cigars must necessarily be injured.    It may be contended by the defendants that this removal was not their act, and that even their knowledge of it until after the injury was done, is not proved.

But proof of such knowledge was unnecessary.    Being in possession of the cigars, holding the warehouse receipt for them, and being the only persons who could control in regard to their deposit and safe keeping, the defendants, as a matter of ordinary care and diligence, were bound to keep themselves informed upon the subject.    Their neglect to do so was an omission of duty, which rendered them liable to the same extent as if the removal had been their own act.

*Hall McAllister* for Respondent.

The liability of the defendants is that of unpaid bailees, and as such, they are only liable for gross negligence.

The bailment of the goods in question belongs to that class of bailments called pledge or pawn.

Lord Holt, in the leading case of Coggs *v.* Bernard, (Lord Raymond Rep., 909,) says : " Where goods or chattels are delivered to another as a pawn, to be security for money borrowed of him by the bailor, this is called in Latin *vadium*, and in English, a pawn or pledge."

This transaction is spoken of in the complaint " as a pledge," and there can be no doubt belong to that class of bailments.

The ownership of the goods remained in the plaintiffs, subject to the rights of the defendants to retain possession thereof as security for the payment of their debt.

Lord Holt, in aforesaid case of Coggs *v.* Bernard, says : " The law requires nothing extraordinary of the pawnee."

Bailees are divided into paid and unpaid agents.

Where there has been no conversion of the goods, the liability of paid agents and unpaid agents differ.    Paid agents receive a compensation for carrying or keeping the goods, or for rendering services in reference to them.    Such are carriers, innkeepers, warehousemen, forwarding agents, and the like.    These are liable for want of ordinary diligence, or, which is the same thing, for ordinary negligence.    Paid agents may be sued either in *assumpsit* or case—that is, for breach of promise or neglect of duty.

Unpaid agents, who have possession of the property of others, are persons undertaking to keep, or carry, or perform something about the thing, without reward;—such as finders, pawners, borrowers, hirers; for though a hirer prays for the use of the thing, he is not paid to take care of it.    In all these cases, if there has been no conversion, so that

St. Losky *v.* Davidson.

trover will not lie, the only remedy for loss or injury is by action on the case.

Unpaid bailees are only liable for gross negligence.

In the great case of Foster *et al.*, Executors, etc., *v.* the Essex Bank, 17 Mass., 479, the Court say, that in case of a deposit to be kept without reward, "the bailee will be answerable only for gross negligence, which is considered as equivalent to a breach of faith." P. 498.

The bailor "shall be the loser, unless the person in whom he confided has shown bad faith in exposing the goods to hazards, to which he would not expose his own." P. 501.

"The depositary is answerable, in case of loss, for gross negligence only, or fraud, which will make a bailee of any character answerable." P. 507.

Whitney and Wife *v.* Lee, 8 Metcalf, 91, establishes the same rule. Stanton & Little *v.* Bell & Joiner, 2 Hawks, 145; Tompkins *v.* Saltmarsh, 14 Serg. & Rawle, 275; Tracy *et al. v.* Wood, 3 Mason, 132.

It really makes but little if any difference in the present suit, whether the defendants are considered liable for ordinary, or only for gross negligence; but I have deemed it proper to call attention to the degree of negligence which renders them, as unpaid bailees, liable.

The defendants, by the terms of the pledge, restricted their liability by stipulating that the cigars should be at the risk of the plaintiffs.

Can a bailee restrict his liability to his bailor?

The modern decisions have perhaps established the principle that common carriers, innkeepers, and persons standing in a like relation and subject to the same law, cannot make a binding special contract which will restrict their liability.

Such a contract is held to be void.

But the persons subject to this law, are persons engaged in a public employment, and who cannot refuse to act upon application; such as common carriers, who are compelled to receive goods; inkeepers, who are compelled to entertain guests, and the like; not to those who are at liberty either to accept or refuse employment.

Even as to common carriers, innkeepers, etc., the above doctrine has only been established, if at all, after long controversy among the Courts.

There is no doubt that ordinary bailees, for hire, may stipulate for a different degree of liability from that to which they would be subject in the absence of an express contract; that is, any exemption which stops short of protection in case of fraud. Alexander *et als. v.* Greene *et als.*, 3 Hill, p. 9; Wells *v.* The Steam Navigation Company, 2 Comstock, p. 204.

If bailees, for hire, may stipulate for a restricted liability, *a fortiori* unpaid bailees may do so. These last act without reward; they are not paid to take care of the bailment.

What is the meaning of the expression, "at our risk?"

To ascertain the meaning of these words, as here used, we must look at the relation of the parties.

The possession of the goods in question by defendants was a compul-

St. Losky *v.* Davidson.

sory one, only had for the purposes of complying with our Statute of
Frauds, and rendering their loan secure.

It cannot be said, with reason, that the exemption in the contract
pointed to one kind of risk more than another.

That the parties knew the law, and are to be treated as having con-
tracted in reference thereto, cannot be denied.

As unpaid bailees, they, without any special contract, are only liable
for gross negligence.

Possessing a knowledge of the fact that they were only responsible
for gross negligence, what did they intend by using the word "risk?"

Clearly they meant to excuse themselves from anything other than an
intentional or a fraudulent injury of the goods by themselves; other-
wise the stipulation as to risk would have nothing upon which to oper-
ate—would be mere surplusage.

Defendants knew they were not responsible for theft, or fire, or even
ordinary negligence, but only for gross negligence; and they stipula-
ted for exemption as to loss arising even from this.

The keeper of the Bay Warehouse was the common agent selected by
both parties for the keeping of these goods. He is distinctly recog-
nized as such by the contract.

The bailment was left in the hands of this common agent, and always
remained in his custody. The defendants never interfered, or attempted
to interfere with the goods. They never knew of the removal to Scott's
Warehouse; that was the act of the keeper of the Bay Warehouse; and
against the consequences of this act, if improper, or of any other act of
his, they had distinctly stipulated by their contract.

Mr. Justice TERRY, after stating the facts, delivered the opinion of
the Court. Mr. Chief Justice MURRAY concurred.

A pledge is a bailment which is reciprocally beneficial to both parties.
The law therefore requires of the pledgee the exercise of ordinary dili-
gence in the care and custody of the goods pledged, and he is responsi-
ble for ordinary negligence. Story on Bailments, §§ 323, 332; Smith's
Lead. Ca., 251, 258. What will amount to ordinary negligence must
depend on the circumstances of the transaction, and the character of
the pledge. In general, it may be defined to be the neglect to exercise
that degree of care which an ordinarily prudent man usually bestows
upon his own property of a like description.

Was the liability of defendants changed by the stipulation, and if so,
to what extent?

It is contended that it was competent for the parties to stipulate for
a different degree of liability to that which would attach in the absence
of an express contract, and that the words, "stored in the Bay Ware-
house at our risk and expense," operated to discharge the defendants from
all responsibility on account of damages from any other cause than in-
tentional fraud of defendants.

We do not give the words cited a construction so comprehensive. In
our opinion they could operate to release the defendants from responsi-

bility only while the goods remained in the place designated. Upon their removal it was avoided, and the defendant's liability was such as by law attaches under like contracts.

The fact that the goods were removed by the keeper of the warehouse without the direction or knowledge of defendants, is not material; it was their duty to see that goods were kept in the place agreed on, or, if a removal was necessary, to have them stored in a secure and proper place. The keeper of the warehouse, as the agent or bailee of defendants, is responsible to them for any damage resulting from his unauthorized acts.

Judgment reversed and cause remanded.