# UNION PACIFIC RAILROAD COMPANY v. GRACE.
## (No. 767.)

Carriers—Railroads—Hand  Baggage — Loss—Negligence — Evidence—Materiality.

1. A railroad company was not liable as an insurer for the loss of hand baggage of a passenger, which was not checked as baggage but was kept with the passenger until just before arrival at destination, and then, with like baggage of other passengers, carried to the end of the car by a porter, or one supposed to be in charge of the car, for the purpose of assisting the passengers in alighting, and found to be missing when the passenger got off the train, but would be liable, if at all, only upon a showing of negligence.

2. Ordinary care does not require a railroad company, as a carrier of passengers, to see that no passenger takes from the car other hand baggage than his own.

3. In an action against a railroad company for the loss of a passenger's suit case, it was alleged in the petition that, upon the purchase of a first-class passenger ticket entitling the plaintiff, with his baggage, to be conveyed between certain specified points or stations, over the defendant's railroad, the plaintiff was received as a passenger for the purpose of being carried, with his baggage, on a certain train between said points, the plaintiff placing said suit case in a car of said train in which he was located, that upon the arrival of the train at plaintiff's destination the defendant, by its agent and employee, carried the suit case out of said car, and that the defendant, through its said servant and agent, negligently lost the baggage. *Held,* (1) That the petition alleged full performance by the carrier of its contract to convey the plaintiff from and to the specified points. (2) That the petition and the evidence, the latter showing that the suit case was retained by the passenger, without being checked, until it was carried out of the car by the alleged agent or servant of the company, with like baggage of other passengers, to assist plaintiff in alighting from the train, negatived a delivery of the suit case to the company for transportation, but disclosed that if it was delivered to the company at all it was for the special purpose of assisting the plaintiff to remove his said baggage from the car, and in the absence of a showing of negligence on the part of the servant in so removing the baggage the company was not liable; there being no evidence showing or tending to show that the

care taken of the suit case by the alleged servant was not such as is usually and ordinarily taken of such property under similar circumstances.

4. In said action, the fact testified to by the plaintiff that when he alighted from the train and found the suit case to be missing the alleged agent or servant of the defendant stated that he saw someone that might have taken the suit case and would run and see if he could see him, and, on his return in a few minutes, that he could not find the man he referred to, was immaterial.

[Decided October 10, 1914].                    (143 Pac. 353).

Error to the District Court, Laramie County; Hon. William C. Mentzer, Judge.

The action was brought by Robert N. Grace against the Union Pacific Railroad Company. Upon a trial to the court, without a jury, judgment was rendered in favor of the plaintiff, and the defendant brought error.

The material facts are stated in the opinion.

*Herbert V. Lacey* and *John W. Lacey*, for plaintiff in error.

The statements by the parlor car cook, after plaintiff had alighted from the train, to the effect that he had seen someone, who might have taken the baggage, and would run and see if he could see him, and, after his return, that he was not able to find the man he referred to, were incompetent and immaterial as evidence and should have been excluded. The person making such statements was not shown to have had any authority or duty to receive the hand baggage of the plaintiff or other passengers or care for the same on behalf of the company. It cannot be claimed that he was a general agent; he had no such general powers or duties as a conductor, but his duties were only those of a cook; and he could not bind the company by anything done by him outside of the capacity of his employment, much less could he bind the company by anything he might say. (Vicksburg & M. M. R. Co. v. O'Brien, 119 U. S. 99; Kyner v. Min. Co., 184 Fed. 43; Williamson v. R. R. Co., 144 Mass. 148;

Ry. Co. v. Fray, 35 Kan. 700; Silveira v. Iverson, 128 Cal. 187; Rice v. St. Louis, 165 Mo. 636, 65 S. W. 1002).

The plaintiff and his wife were traveling together, and the highest value of the hand baggage and contents, as shown by the evidence, was $54.25. The suit case, valued at $20, was the wife's property before her marriage. Several articles in the suit case belonged to the wife, and, according to the evidence, the value of her property, including the suit case, was $39.75. She had absolute title to such property and the right to maintain any necessary action in her own right respecting it. (Comp. Stat. 1910, Secs. 3908, 3910, 4311). No judgment in this case can bind the wife, but she can maintain an action for the loss of her part of the baggage, if it was lost under circumstances rendering the company liable. Yet the value of her property was included in the judgment in this case.

The company was not liable under the evidence. It was not shown that the parlor car was owned or operated by the railroad company, and there was no presumption that the company operated or owned the car. Since many railroad companies do not own or operate parlor or sleeping cars, any judicial notice that might be taken, would be of that fact, which would result in a finding against the plaintiff below. By the overwhelming weight of authority it is held that a railroad company is not liable for the acts or actions of any other company or its servants operating sleeping cars or parlor cars over its line. But had the car been operated and owned by the company, there would still be no ground for recovery. The allegation in the petition that the plaintiff and his wife were entitled by the purchase of their tickets "with their baggage" to be conveyed from Denver to Cheyenne does not authorize any recovery for loss of hand baggage en route. It is evident that the company cannot be held liable on the theory of a breach of its contract, or the omission to perform something required by the contract, for it appears from the petition that the contract was fully performed by the company. The attempt seems to be to show a new and distinct agreement by the averment that

upon the arrival of the train in Cheyenne, the defendant by its agent and employe took plaintiff's said baggage from him and carried it out of the car. This is insufficient to show a contract or agreement by the company, without more particularly designating the agent or the character of his employment or duties. The principle is established that in the case of a bailment for the sole benefit of the bailor, otherwise known as a gratuitous bailment, the bailee is liable for the loss or destruction of the article bailed only in cases where the loss or destruction has been caused by the gross negligence or bad faith of the bailee. (Hibernia Bldg. Ass'n. v. McGrath, 154 Pa. St. 296, 26 Atl. 377; Minor v. Ry. Co., 19 Wis. 40; R. R. Co. v. Flanary, (Tex.) 50 S. W. 726; Whitney v. Lee, 8 Metc. (49 Mass.) 91). And upon the evidence as well as by the petition the bailment is shown to have been gratuitous, and hence there could be no liability unless the loss was caused by fraud or gross negligence of the bailee.

It is plain from the evidence that the new contract was made by the cook on his own responsibility and not as representing the company. He had no authority to make any contract binding upon the company. (Whicher v. R. R. Co., 176 Mass. 275, 57 N. E. 601; Springer v. Pullman Co., (Pa.) 83 Atl. 98; Sperry v. Ry. Co., (Conn.) 65 Atl. 962; Whitney v. Pullman Co., 143 Mass. 243, 9 N. E. 619; Barrott v. Pullman Co., 51 Fed. 798).

*William B. Ross,* for defendant in error.

The testimony of the plaintiff as to what was done by the person in charge of the parlor car was uncontradicted. There must have been someone connected with the railroad company besides the porter himself who knew the terms of his contract and the limitation of his authority, but no such witness was produced. If he did not have the authority of a regular porter it might have been shown by the company. But it made no difference whether he had authority to take out the suit case or not, the railroad company is responsible for what he did so long as he was allowed to act as a general

porter.  It has no right to allow a man placed apparently in
charge of the car to receive and take charge of the baggage
of passengers unless it expects to be responsible for his
acts.  (Fisher v. Geddes, 15 La. Ann. 14; Abbott's Proof
of Facts, 175, 179; Fowles v. Evans, 52 Minn. 551; Titus
v. Ins. Co., 81 N. Y. 410; 8 Abbott N. C. 315; Barnett v.
Gluting, 3 Ind. App. 420; Wood v. R. R. Co., 8 N. Y. 167;
Gallinger v. L. S. Traffic Co., 67 Wis. 534; Curtis v. Mur-
phy, 63 Wis. 4; Green v. R. R. Co., 128 Mass. 221; Beat-
tie v. R. R. Co., 90 N. Y. 643; Reynolds v. Collins, 78 Ala.
94; Leslie v. Knickerbocker, &c. Co., 63 N. Y. 35; Dunbar
v. McGill, 69 Mich. 297; Stitt v. Wilson, Wright 505: Koch
v. Howell, 6 Watts & S. 350; Mitchum v. State, 11 Ga.
615; Rutland v. Hathorn, 36 Ga. 380; Handy v. Johnson,
5 Md. 450; Perkins v. Wright, 37 Ind. 207).  The conver-
sation between the porter and the plaintiff was admissible
as part of the *res gestae*.  (Lund v. Inhabitants &c., 63
Mass. 36; Hooper v. Edwards, 20 Ala. 528; Wharton's Cr.
Ev. par. 262; McLeod v. Ginther's Adm'x., 4 Ky. L. Rep.
276).

The plaintiff was entitled to recover the entire value of
the suit case and contents, notwithstanding that part of the
property belonged to his wife, under Section 4313, Comp.
Stat. 1910, providing that a person with whom or in whose
name a contract is made for the benefit of another may
bring an action without joining the person for whose bene-
fit it is prosecuted.  (Dexter v. R. R. Co., 42 N. Y. 326;
Baltimore S. P. Co. v. Smith, 23 Md. 407; Malone v. R.
R. Co., 12 Gray, 388; Rogers v. R. R. Co., 1 N. Y. Supr.
Ct. 396; Curtis v. R. R. Co., 74 N. Y. 116; Pullman Co.
v. Gavin, 93 Tenn. 53).  The fact that the baggage was
not checked but under the control of the passenger did not
release the company from liability.  (Bonner v. DeMen-
doza, 16 S. W. 976; Ouimit v. Henshaw, 35 Vt. 605; Mor-
ris v. R. R. Co., 1 Daly, 202; Walsh v. The H. M. Wright,
Fed. Cas. No. 17,115; Gamble v. R. R. Co., 24 U. C. Q.
B. 407).  Nor is it a good defense that the company did not
own or was not operating the car.  (Spaids v. Steamship

Co., 3 Daly, 139; Kinsley v. R. R. Co., 125 Mass. 54; R. R. Co. v. Martin, 11 Ill. 219). There were not two contracts —one to convey the baggage and the other to take it from the car. (Cary v. R. R. Co., 29 Barb. 45). The carrier must deliver the property carried in order to terminate its liability. Under the circumstances the company was liable for the loss of the baggage, for it appears that it was lost through the carelessness and negligence of the company's servant. (Roth v. R. R. Co., 34 N. Y. 551; Richards v. Ry. Co., 62 Eng. Com. Law (7 Manning), 837; Green v. R. R. Co., 41 Ia. 414; Ditman &c. Co. v. R. R. Co., 91 Ia. 416; Ry. Co., v. Swift, 79 U. S. (12 Wall.) 262; Hawkins v. Hoffman, 6 Hill, 586; Merrill v. Grinnell, 30 N. Y. 594; Flaherty v. Greenman, 7 Daly, 481; Dill v. R. R. Co., 7 Rich. Law, 158, 62 Am. Dec. 407; R. R. Co. v. Katzenberger, 84 Tenn. 380).

BEARD, JUSTICE.

Action by defendant in error against plaintiff in error to recover the value of a suit case alleged to have been lost through the carelessness of defendant. Judgment for plaintiff, and defendant brings error.

Plaintiff below alleged in his petition (so far as necessary to here state) "That on or about the 12th day of January, 1910, plaintiff purchased for himself and for his wife first-class passenger tickets from the Union Pacific Railroad Company, a common carrier, which tickets entitled plaintiff and his wife, with their baggage, to be conveyed from Denver, Colorado, to Cheyenne, Wyoming, over the railroad of the defendant. That on said date, in consideration of the sum then paid to it by plaintiff, the plaintiff and his wife were received by the defendant as passengers for the purpose of being carried, with their baggage, on the railroad in a certain train from Denver to Cheyenne. That plaintiff and his wife boarded said train at Denver, at said time, with his baggage consisting of a suit case and contents thereof," (describing the same and values) "and placed said suit case and contents thereof in a car of said train in which

plaintiff and his wife were located, as aforesaid, for the purpose of conveying said baggage from Denver to Cheyenne. That upon the arrival of the train in Cheyenne, the defendant, by its said agent and employee, took plaintiff's said baggage from plaintiff and carried it out of the said car, and plaintiff and his wife got off of said car, but the defendant, through its said servant and agent, negligently and carelessly lost or retained said baggage and did not deliver said baggage to this plaintiff when plaintiff got off of said train, or within a reasonable time thereafter, or at all, although plaintiff was then and there ready and willing to receive said baggage, and demanded the same from defendant. That on account of the negligence and carelessness of the defendant, through its said employee, as above set forth, plaintiff's baggage has been wholly and totally lost, and plaintiff has not been reimbursed for the value of the same." The answer of defendant was a general denial.

The case was tried to the court, without a jury, and there was a general finding in favor of plaintiff. The only witness on behalf of plaintiff was the plaintiff himself. He testified, in substance, that he did not check the suit case, but had it in his possession on the floor near his seat in the parlor car in which he was riding until the train arrived in Cheyenne. That he paid extra fare for riding in the parlor car, and thought he paid it to the train conductor. That he did not remember of seeing any Pullman conductor. That there was a person on the parlor car he supposed was a porter because he looked after the people on the car and was the only person on there to look after people. That he (said porter) carried our suit cases in, and he served meals and lunches on the car and waited on us in general as porters do on trains; that he did the cooking, and plaintiff and wife had dinner served by him, and when the train arrived at Cheyenne, he took off the suit cases. "He come to me along about the last, and I says: 'I'll carry it out;' and he said: 'I'll take it out.' I had been sick and I supposed he saw I was sick and wanted to carry it out for me, so I let him take it. He took the suit case out of my hand and

started toward the door with it." Witness did not remember seeing him any more until he got off the train. Did not see where he placed the suit cases of passengers, including plaintiff's, when he carried them toward the door, nor did he see other passengers take their suit cases from the vestibule of the car when he got off. That he was about the last one, if not the last one out, and when he asked this porter who was standing where he got off for his suit case it was gone. Over the objection of defendant, the witness was permitted to testify, that when he got off the car and asked for his suit case and it was not there, the porter remarked in words to the effect "that he saw somebody that might have taken the suit case, and that he would run and see if he could see him." That he returned in three or four minutes and said: "He could not find the man he referred to."

On the trial to avoid a continuance applied for by defendant, the plaintiff admitted that if Mayweather, the person mentioned by plaintiff in his testimony as the porter, were present he would testify that he (Mayweather) was employed on the parlor car in which plaintiff was riding, as cook; that his only duty was to cook any meals which passengers might order from him; that it was no part of his duty to receive any baggage for and on behalf of the defendant; that he did not at any time receive the suit case from plaintiff for and on behalf of defendant; that when the train reached Cheyenne, he gratuitously assisted the passengers, at their request, in carrying their hand baggage ·from their respective seats into the vestibule of the car, at the end of the car from which all passengers made their exit; that he assisted plaintiff by carrying his suit case into the vestibule, and deposited it there with the hand baggage of other passengers, and having done so went back into the car to assist other passengers in like manner; that he did not steal the suit case; that if it was stolen, it was while he was attending to other duties as cook in said car; that plaintiff followed him to the vestibule when he had said suit case and other hand baggage and saw him deposit it there

and saw him return into the car; that he does not now, nor never did know what became of it after he deposited it in the vestibule; that he never thought he saw somebody other than plaintiff with it; that he did not run off to see if he could get some one, or come back and say he did not see the fellow; that he never asked plaintiff to place the suit case in his charge; and that the train left Denver about four o'clock p. m. and arrived in Cheyenne about eight o'clock the same evening. The foregoing is, we think, a fair summary of all the evidence in the case.

There are two reasons apparent from the pleadings and the evidence in this case why the railroad company cannot be held liable as a common carrier. The plaintiff alleged in his petition that the contract entitled himself and wife, with their baggage, to be conveyed from Denver to Cheyenne, "and were conveyed on said train from Denver to Cheyenne"; thus alleging full performance by the company of its contract. In the second place, both the petition and the evidence negative a delivery of the suit case to the company for transportation; but discloses that if delivered to it at all it was for the special purpose of assisting the plaintiff to remove his baggage from the car. Numerous cases bearing upon the question involved have been cited by respective counsel, but one more nearly in accord with the facts of this case than any of those cited is the recent case of Hasbrouck v. N. Y. C. & H. R. R. Co., 202 N. Y. 363, 95 N. E. 808, 35 L. R. A. (N. S.) 537, Ann. Cas. 1912 D, 1150. In that case a lady passenger requested the conductor to send some one to take her suit case off the train at Rochester, where she was to take another train. About ten minutes later a trainman wearing the usual badge of his position on his cap, came to her and asked if she was the lady who had made the request of the conductor and if she was through with her suit case, when she asked: "Is this Rochester?" he said: "Yes, if you are through with your suit case I will take it." Believing the train was about to stop at Rochester she allowed him to take her suit case, which he carried to the rear of the car, as she was facing

toward the front.  Soon after she saw him pass through
to the front of the car, lock the door to the toilet room and
walk back again to the rear.  During this time the train was
in motion and ten or fifteen minutes elapsed between the
delivery of the suit case and the arrival of the train at
Rochester.  When the train stopped the trainman stood at
the foot of the step at the rear of the car, which was not a
Pullman, but an ordinary coach.  In the case here the car
was a parlor car, but was running in the daytime as a day
car.  It was not a sleeping car.  (Whicher v. Boston & Al-
bany Railroad, 176 Mass. 275, 57 N. E. 601, 79 Am. St.
Rep. 314).  He did not help her off, but handing her the
suit case, said: "Here's your grip."  The suit case was
not locked.  A little later she found it had been rifled of
part of its contents.  The plaintiff introduced in evidence
certain rules of the company and other evidence as to the
duties of the trainmen.  The court in its opinion said:

"The conclusion of the trial court that the trainman was
acting within the line of his duty when he took the suit case
of the plaintiff in order to help her off the train was war-
ranted by the evidence.  *  *  *  *  *  In furnishing
the assistance which he assumed to afford to the passenger
he was obliged only to discharge that duty so as not to con-
flict with a similar obligation to other passengers, and if for
that reason he could not have given the suit case undivided
attention and it had been rifled without any negligence on
his part the defendant would not have been negligent, but
in this case there is no explanation offered whatever of how
the loss occurred."

The trial court found that the defendant negligently
cared for the suit case; and on that question the court said:

"There is nothing to show what care the trainman be-
stowed upon the suit case, and in the absence of any proof
on the subject the trial court or the jury would be allowed
to infer that it had been occasioned by negligence. * * * *
As the trainman was acting within the scope of his em-
ployment when he took the suit case, in legal effect it was
the same as if the defendant, personified, had taken it.

(Bunnell v. Stearn, 122 N. Y. 539, 543, (25 N. E. 910, 10 L. R. A. 481, 19 Am. St. Rep. 519). Therefore, the plaintiff's property was lawfully in the possession of the defendant and the question arises what was its duty in reference thereto. Its possession was not that of a carrier, because the suit case had not been checked as baggage nor entrusted to it for the journey, but only for the special purpose of aiding a lady passenger in getting off the train in accordance with a custom established by itself and, hence, it was not liable as an insurer. Its possession was that of a bailee, and the law of bailments measures its obligation to the plaintiff in regard to her property." In that case the defendant offered no evidence. How the loss occurred was in no way explained, nor was it shown what care was taken of the suit case by the trainman. In the case before us the plaintiff's suit case was not delivered to the defendant for transportation as baggage, but was retained in the possession and under the control of plaintiff until the train arrived at Cheyenne; and the service offered by Mayweather and accepted by plaintiff was to assist him in removing his hand baggage from the car, a service which, in the circumstances, the defendant was under no contractual obligation to render. Had Mayweather been requested by plaintiff to carry his suit case out of the car and he had refused to do so, we think it quite clear that no action for damage for a breach of the contract alleged in the plaintiff's petition could be maintained. It was admitted on the trial, that, if present, Mayweather would testify that he was not authorized to receive baggage for and on behalf of defendant and that he did not receive the suit case as baggage for and on its behalf. The only evidence of his authority or of any custom established or permitted by defendant authorizing him to do so was the testimony of plaintiff that on this occasion he carried our suit cases in, and looked after the passengers in general as porters do on trains; that he was the only person on the car to look after the passengers; and that plaintiff supposed he was a porter. But assuming the evidence sufficient to establish the fact that he was a porter on the

car for whose acts in relation to passengers' hand baggage the defendant was responsible, the question still remains, was he negligent in doing what he did?' When the train arrived at Cheyenne he assisted the passengers, including plaintiff, by carrying their hand baggage from their respective seats in the car to the vestibule at the end of the car at which they made their exit, and placed the baggage there. It is apparent that he could not have given any particular piece of baggage his undivided attention; and it is probable that plaintiff's suit case was taken by some one else in passing through the vestibule on leaving the train. To hold the defendant liable for the loss of the suit case in this case would in effect be a holding that it was an insurer, which it was not. Ordinary care did not require the defendant to see to it that no passenger took from the car other baggage than his own. It was so held in Springer v. Pullman Co., 234 Pa. St. 172, 83 Atl. Rep. 98. "To so hold would be to impose upon the company the duty of seeing that no passenger left the car with any baggage except his own, which again would be virtually making the carrier an insurer, besides subjecting the passengers to a scrutiny and surveillance which the ordinary traveler would have a right to resent. We cannot think that the ordinary care exacted of the carrier requires any such officious interference as this." There is no evidence in the present case showing, or tending to show, that the care taken of the suit case by Mayweather was not such as is usually and ordinarily taken of such property under similar circumstances. It may be that, in the absence of any evidence as to the care taken of the property while in the possession of a bailee, the proof of its loss creates an inference of negligence; but when it is made to appear what care was taken, and it is not shown that such care was not reasonable care, no such inference can be indulged in. We have not deemed it necessary to determine whether the defendant was a gratuitious, or an ordinary bailee, as in our opinion the evidence is insufficient to warrant the conclusion that reasonable and ordinary care was not exercised in this instance.

As to the error assigned in admitting the remarks of Mayweather after the loss was discovered, we do not think the evidence was material. The first remark was the mere expression of an opinion as to how the loss might have occurred, and the other remark had no connection with the circumstances of the loss, and was evidently not considered at all important by the court, for in ruling on the objection the court remarked: "I cannot see that it is very material." There were no special findings of fact or conclusions of law made by the court, and we are not advised upon what theory the court based its judgment; whether it considered that the suit case was in the possession of defendant as a common carrier and therefore liable as an insurer, or that defendant had not exercised reasonable care. In either case we are of the opinion that the evidence is insufficient to support the judgment.

The judgment of the District Court is reversed and the cause remanded.                                        *Reversed.*

Scott, C. J., and Potter, J., concur.