(No. 14885.—Judgment affirmed.)

MINNIE JACOBS, Appellee, *vs.* HARRY GROSSMAN, Appellant.

*Opinion filed December 19, 1923.*

1. PAWNBROKERS—*what constitutes a pawn.* A pawn is a species of bailment which arises when goods or chattels are delivered to another as a pawn for security to him for money borrowed of him by the bailor.

2. SAME—*pawn is bailment for mutual benefit and requires exercise of ordinary care.* A pawn is a species of bailment for the mutual benefit of the bailor and bailee, and at common law the pawnbroker is answerable only for failure to exercise ordinary care and diligence in the protection of the property entrusted to him.

3. SAME—*pawnbroker, without consent of the owner, cannot transfer property pawned.* Where the circumstances indicate that the pledgor relied upon the pawnbroker's particular method of safeguarding property entrusted to him, the pawnbroker cannot, by transferring the pledge to another without the consent of the pledgor, relieve himself of the obligation to use ordinary care to keep the property, and any attempt to sell, lease, pledge or otherwise part with the title or possession of the bailment constitutes a conversion in every case where the bailment can be properly regarded as a personal trust in the bailee.

4. SAME—*section 10 of the Pawnbrokers act prohibits sale of pawnbroker's interest in the property.* Section 10 of the Pawnbrokers act, providing that no property pawned or pledged shall be sold or disposed of by the pawnbroker within a year after default without the consent of the pledgor, prohibits the sale of the pawnbroker's interest in the property to another pawnbroker without the written consent of the pledgor.

5. BAILMENTS—*rights of parties to bailment for mutual benefit may be changed by contract of bailment.* Whatever may be the rights of the parties in a bailment for the mutual benefit of the bailor and the bailee, the parties may increase or diminish these rights by stipulations in the contract of bailment.

APPEAL from the First Division of the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding.

RICHARD I. GAVIN, for appellant.

ADOLPH MARKS, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This case is brought to this court on a certificate of importance and appeal from a judgment of the Appellate Court for the First District affirming a judgment of the municipal court of Chicago in favor of the appellee and against appellant in the sum of $330.

Appellee, Minnie Jacobs, on April 8, 1921, began an action of replevin in the municipal court of Chicago against appellant, Harry Grossman, a licensed pawnbroker, to recover possession of a diamond ring delivered by herself to appellant to secure the payment of $70 borrowed from him. A replevin bond was given for $800 and a writ of replevin issued. It was returned April 12, 1921, served but no property found. Appellee then filed a count in trover alleging possession of the ring of the value of $400 and the conversion of it by appellant. The case was heard before the court without a jury.

On June 3, 1919, appellee placed in pawn with appellant, a licensed pawnbroker doing business at 426 South Halsted street, Chicago, the ring and received thereon the sum of $70. Interest on the loan was paid to June 7, 1920. The pawn ticket issued to appellee contained this statement: "This office protected by the Chicago Electric Protective Co.," and described the location and name of the pawnbroker as "Metropolitan Loan Bank, 426 S. Halsted St." The ticket further described the goods pawned, the amount loaned and the time of redemption. Between October 7 and 10, 1920, appellant sold all his interest in whatever pledges he had to Jacob Klein, another duly licensed pawnbroker at 502 South Halsted street, for the sum of $16,000 or $17,000, which represented the principal sums loaned on said pledges with interest thereon. The pledges were sold by

appellant to Klein upon the express understanding that the pledgers might redeem from Klein in the same manner as they could from appellant had he not sold his interest in the pawns. It was admitted that Klein is a reputable business man, and it was also conceded by appellant that no notice was given by him, either expressly or impliedly, to the appellee of the transfer of her property. On January 8, 1921, the pawnshop of Klein was entered by four armed robbers. The robbers ordered the clerks employed there to hold up their hands, and they forcibly took from a safe a large number of articles, including the diamond ring in question of appellee, which has never been recovered.

There is an unimportant dispute in the record evidence as to whether appellee or her sister, after the sale of appellant's business to Klein, had called on Klein and secured an additional loan upon a diamond ring other than the one in question. The Appellate Court found that the evidence on this point showed that appellee's sister, and not appellee, was involved in that transaction. Appellant admits in his reply brief that he does not rely in any way on this testimony to show actual notice to appellee of the change in the possession of the pledge in question. As to the other material facts above set out there is no dispute between the parties.

Counsel for appellant relies for a reversal of the judgment on two legal propositions: First, that a pawnbroker is bound only to use ordinary care for the safety of the pawner's property, and if the property is lost or destroyed without the negligence of the pawnee then he is not liable; second, that a pawnbroker has the right to assign or sell to another his interest in an article pledged to him.

A pawn is a species of bailment which arises when goods or chattels are delivered to another as a pawn for security to him on money borrowed of him by the bailor. It is the *pignari acceptum* of the civil law, according to which the possession of the pledge passes to the creditor, therein dif-

fering from a hypotheca. It is a class of bailment which is made for the mutual benefit of the bailor and bailee. All that is required by the common law on the part of a pawnee in the protection of the property thus entrusted to him is ordinary care and diligence. Consequently, unless a failure to exercise such care and diligence is shown, a pawnee is not answerable for the loss of the article pledged. (30 Cyc. 1169; *Standard Brewery* v. *Malting Co.* 171 Ill. 602.) This is an elementary principle, and there can be no question as to the accuracy and correctness of appellant's first proposition. But the question arises as to whether or not appellant was guilty of negligence in transferring the interest of the pawner without giving her any notice of such transfer. Appellant's duty to her was to safely keep and protect the property pledged. It was a legal obligation on his part to appellee from which he could not relieve himself by transferring the pledge to another without her consent. Appellee relied upon him to keep and protect her property where it would be reasonably safe, and he had in substance assured her by the language on the ticket that her property was insured or safeguarded. He violated this duty or obligation to her by transferring the possession of her property to another, to be kept at another place which the evidence does not show to be protected by a protective company and without giving her notice of such custody and transfer.

Whatever may be the right of the parties in a bailment for the mutual benefit of the bailor and the bailee, it is unquestionably the law that the parties may increase or diminish these rights by stipulations contained in the contract of bailment. (30 Cyc. 1167; *St. Losky* v. *Davidson,* 6 Cal. 643.) The sum and substance of appellant's contract was that he would keep appellee's property at his office or shop described as aforesaid and which was protected as aforesaid. The pawning of the ring by appellee under the circumstances imposed a personal trust upon appellant to personally keep the property at his shop and under the assurance of protec-

tion as aforesaid, and he could not at his will, without the consent of appellee, transfer the possession and custody thereof to another without such consent. The rule is stated in 3 R. C. L. 112, that any attempt on the part of the bailee in an ordinary simple bailment of a pawn, to sell, lease, pledge or otherwise part with the title or possession of the bailment constitutes a conversion in every case where the bailment can be properly regarded as a personal trust in the bailee.

There is another controlling reason for holding that appellant is liable for the loss of the ring and for holding that he could not transfer the possession of the article pawned to him to another and escape liability for a conversion. Section 10 of the Pawnbrokers act provides, in part, as follows: "No personal property pawned or pledged shall be sold or disposed by any such pawnbroker within one year from the time when the pawner or pledger shall make default in the payment of the interest on the money so advanced by such pawnbroker, unless by the written consent of such pawner or pledger." Appellant claims that the proper interpretation of this statute is that it prohibits the sale of an article, including the interest of the pledger or pawner as well as his own, and does not refer to a sale of only the interest of the pawnbroker or pledgee. The statute is not subject to such construction. It should be construed to mean what it says: that the property must not be sold or disposed of by the pawnbroker without the written consent of the pledger. The statute does not confine itself to a sale, but also forbids any disposition of the same without consent as aforesaid. It cannot be seriously disputed that appellant did dispose of the property without the consent of appellee within the meaning of the foregoing section of the statute.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*