Jennie Owen McCall, Appellant, v. The Pullman Company, Appellee.

Gen. No. 43,767.

Opinion filed June 4, 1947.   Rehearing denied June 19, 1947.   Released for publication June 19, 1947.

JULIUS S. NEALE and WALTER E. MOSS, both of Chicago, for appellant.

HERBERT S. ANDERSON, ERWIN W. ROEMER and WAYLAND B. CEDARQUIST, all of Chicago, for appellee.

Mr. Presiding Justice Lewe delivered the opinion of the court.

This is an action to recover damages for breach of an alleged contract of bailment of a leather-covered hatbox and the contents thereof consisting of a Russian sable neckpiece and other wearing apparel. There was a jury trial and verdict and judgment in defendant's favor. Plaintiff's motions for judgment notwithstanding the verdict and for a new trial were denied. Plaintiff appeals.

The evidence discloses that on January 17, 1942, plaintiff Jennie Owen McCall and her husband Warner McCall boarded one of defendant's sleeping cars at Rantoul, Illinois bound for New Orleans, Louisiana, where they expected to make a brief stay. When they boarded the train at Rantoul they had nine pieces of baggage, among them being the hatbox in question. They occupied two lower berths (seats 7 and 8, car No. 85). In the presence of the McCalls the hatbox was placed under seat number 8 next to the window by one R. V. Thellkelt, a porter employed by defendant. The McCalls retired about 9:30 p.m. and arose about 8:30 a.m. when a short distance from their destination. About twelve or fourteen minutes before the train reached the station at New Orleans, Thellkelt, in accordance with plaintiff's instructions, removed the baggage belonging to the McCalls and piled it in the vestibule at the end of the car with that of eighteen or twenty other passengers. At the station the McCalls' baggage was the last to be taken from the vestibule of the Pullman car and they were the last two passengers to leave the car after all the baggage had been removed from the vestibule. As they debarked from the train Thellkelt asked them if they had all their baggage and they replied, "Yes." After their baggage was placed on the platform the McCalls pointed it out to two redcaps who in their

presence immediately loaded it on two trucks, except for two bags which the McCalls carried. At that time they were given six claim checks for their baggage by the redcaps. The McCalls either preceded or followed the trucks to the cabstand where in their presence the baggage was put in a cab which they entered and rode to the Jung Hotel.

Upon arriving at the hotel, bellboys took the baggage from the cab to the hotel lobby and placed it before the counter where the McCalls registered. Being informed that their rooms were not ready an employee of the hotel suggested that they have breakfast and leave the baggage with the porter. They acted on this suggestion and after a lapse of about forty minutes went to their hotel rooms. There for the first time since boarding the train at Rantoul, plaintiff counted the baggage and found the hatbox missing. She telephoned the head porter of the hotel and informed him that he had failed to bring up one of the bags. A search was made by the plaintiff and the porter of the hotel baggage room, which proved of no avail. Shortly thereafter plaintiff engaged the same cab which had brought her to the hotel and rode back to the railroad depot. Here she met one Dominic Fonte, night agent for the defendant company. Fonte searched the room where baggage was kept but was unable to find plaintiff's hatbox, and she returned to the hotel. Later in the evening of the same day she returned and met Fonte who took her to the Pullman car where they met Thellkelt the porter. In the presence of plaintiff and Fonte, Thellkelt made a careful search of the Pullman car but did not find the missing hatbox. On the following day, January 19, the McCalls went to the Pullman office in New Orleans where they saw one T. C. Olney, district superintendent for defendant, and informed him of the loss of the hatbox. They remained in New Orleans about ten days, during which period they made several visits to

Olney with reference to the loss of their property. Thellkelt and Fonte had been employed by the defendant for thirty-three and thirty-seven years, respectively.

Plaintiff's first contention is that the court erred in denying her motion for judgment notwithstanding the verdict because of defendant's failure to return plaintiff's property or explain its loss. In the exhaustive briefs filed herein, our attention has not been called to any case determined in the courts of this State involving a factual situation similar to that in the case at bar. To support her contention plaintiff relies strongly on *Hasbrouck v. New York Cent. & H. R. R. Co.*, 202 N. Y. 363, and *Goldstein v. Pullman Co.*, 220 N. Y. 549. We do not regard either of these cases as applicable to the present case, since it appears that no evidence was offered by defendant bailees to explain the loss of property.

In *Reisinger v. Pullman Co.*, 252 App. Div. 87, 297 N. Y. S. 196, plaintiff lost a suitcase in circumstances not unlike those in the instant case. Defendant's porter took it forward on the car and placed it in the vestibule with fifty or sixty other bags belonging to other passengers. Plaintiff remained in the car until each of the thirty passengers had debarked and departed with their luggage. Afterwards she left the car to look for her suitcase and found it was gone. The court said, at page 198:

"A bailee is not an insurer of the subject of the bailment. Negligence in the care of the goods is the basis of the bailee's liability. 'Negligence may indeed be inferred in the first instance from the delivery of the subject of the bailment and the failure to return it. Even so, the inference may be repelled through proof by the bailee that the thing, though not returned, has been lost without his fault (*Claflin v. Meyer*, 75 N. Y. 260 [31 Am. Rep. 467]).' *Honig v. Riley*, 244 N. Y. 105, 110, 155 N. E. 65, 67. In this

case, the defendant gave a detailed explanation as to what was done with the bailed article; it may be fairly assumed that the jury found that defendant exercised due care and was not negligent.''

To the same effect is *Union Pac. R. Co. v. Grace,* 22 Wyo. 452, 143 Pac. 353. We find no conflict in the principles announced in· the cases last cited by plaintiff and defendant and in actions of like character the courts of our own State have established substantially the same governing rules. (*Ohge v. La Salle-Randolph Garage Corp.,* 328 Ill. App. 665.)

So far as the record shows in the case before ·us, Thellkelt and Fonte were both competent and trustworthy employees of the defendant. Thellkelt described in great detail how the McCalls' baggage was removed to the vestibule of the car which they occupied and later to the platform. Afterwards, in the presence of plaintiff, Thellkelt and Fonte made a careful search of the car to locate the defendant's hatbox.

In our opinion *Reisinger v. Pullman Co.,* 252 App. Div. 87, 297 N. Y. S. 196, affirmed by the Court of Appeals in 277 N. Y. 679, 14 N. E. (2d) 388, and *Union Pac. R. Co. v. Grace,* 22 Wyo. 452, 143 Pac. 353, are so nearly analogous to the instant case as to' make these authorities decisive of the issues presented here.

We hold therefore that the court was warranted in denying plaintiff's motion for a judgment notwithstanding the verdict.

Plaintiff's next contention is that the verdict is against the manifest weight of the evidence. Plaintiff's case rests on her own testimony and that of her husband. Three witnesses testified in behalf of the defendant. The evidence shows that the McCalls had traveled extensively and were familiar with the· routine of removing passengers' baggage from Pullman cars; that plaintiff made no mention to Thellkelt, the porter, that the hatbox and its contents were valued

oy her at more than $7,500 and that the hatbox was unlocked. Moreover, plaintiff's testimony is self-contradictory. She testified that she was "convinced" that the hatbox "had been taken at Memphis."

On June 21, 1942 plaintiff's husband wrote a letter to defendant relative to the loss of the hatbox, in which he stated among other things that "the porter Thellkelt told all of us that he had forgotten to get the hatbox out from under the seat. . . ." Defendant introduced the letter in evidence solely for the purpose of impeaching the McCalls' testimony as to the contents of the hatbox. Plaintiff seeks to avail herself of the foregoing excerpt. In her reply brief she maintains for the first time that defendant is bound by all the statements in her husband's letter. We think this contention is without merit. Since the letter was introduced solely for impeachment purposes defendant was not bound by the entire contents. (*Smith v. Pelz*, 384 Ill. 446, 451, 51 N. E. (2d) 534.) The evidence shows that the statement contained in the letter alleged to have been made by Thellkelt to the McCalls was controverted by defendant's witnesses.

Determination of the probative value of evidence and the conclusions to be drawn therefrom lies within the province of the jury.

In our opinion the evidence amply supports the verdict of the jury.

Plaintiff complains of the court's refusal to give Instructions 1 and 3. Instructions 1 and 3 provide in substance that plaintiff (bailor) made out a *prima facie* case by showing delivery of the baggage to defendant bailee and its failure to redeliver; and that in this event defendant had the burden of showing that the failure to redeliver was without bailee's fault.

In the case at bar defendant introduced evidence tending to explain the loss of the property without negligence on its part. In these circumstances the

burden of proof was not shifted from plaintiff to defendant as plaintiff contends, but still rested on the plaintiff. (*Grosh v. Acom*, 325 Ill. 474, 494; *Miles v. International Hotel Co.*, 289 Ill. 320–327; *Wolf v. Pedian*, 251 Ill. App. 564.) The instructions were therefore properly refused.

Plaintiff also criticizes other instructions given and refused. We have carefully examined them but find no defects justifying reversal.

For the reasons given, the judgment is affirmed.

*Judgment affirmed.*

KILEY and BURKE, JJ., concur.