## BLINDER v. UNITED STATES FIRE INS. CO. OF NEW YORK et al.

### No. 51 C 195.

United States District Court
N. D. Illinois, E. D.
March 17, 1952.

Hoffman & Davis, Chicago, Ill., for plaintiff.

Myers & Snerly, Chicago, Ill., for Irmasam Furs.

Heineke & Conklin, Chicago, Ill., for U. S. Fire Ins. Co.

CAMPBELL, District Judge.

This is an action instituted by the plaintiff to recover the sum of $4,500, the alleged value of a mink coat. The complaint alleges liability against the defendant, United States Fire Insurance Company, under a policy of insurance issued to plaintiff by the company; and against the defendant, Irmasam Furs, on the theory of a bailment. At a pre-trial conference of the cause, the Court's attention was directed to the defense set forth in the answer of Irmasam Furs that its liability under the two receipts attached to, and made part of, the complaint and comprising the subject bailment contract, limited such defendant's liability to the sum of $100. Thereupon, the Court directed the parties to file briefs in regard to such defense.

The undisputed facts are that, on May 1, 1950, plaintiff delivered a Silverblu mink coat to Irmasam Furs for cleaning and storage, receiving therefor a temporary receipt, on the back of which the following appeared: "Irmasam Furs will have effected for the benefit of the customer insurance on each article listed in the receipt which shall, in terms usual to such insurance, cover against loss by fire and theft for the value set opposite each item, which value shall also be stated to be the limit of Irmasam Furs' liability for any loss or damage to said article."

The above receipt provided on its face that it was a temporary receipt and that a permanent receipt would follow. On June 9, 1950, Irmasam Furs sent plaintiff a permanent storage receipt for the mink coat, which receipt provided that it superseded any temporary or interim receipt. Condition 2 of the permanent receipt was identical with the condition which was contained in the temporary receipt, quoted above. Condition 3 of the permanent receipt provided: "There shall be no liability for loss of or damage to articles occasioned by war, invasion hostilities, rebellion, insurrection, risks of contraband or illegal transportation or trade, failure of refrigeration because of government order, or any cause beyond the control of the undersigned, nor for deterioration, discoloration from natural causes or inherent vice."

On the face of the permanent receipt it was provided: "Notwithstanding the foregoing, it is understood and agreed that where articles submitted for storage are already covered by insurance carried by the owner of said articles, the undersigned assumes no liability in the event of loss, damage of any character, except by moths or vermin."

On October 25, 1950, plaintiff was informed by Irmasam Furs that the coat had disappeared from its place of business, and that it could not be redelivered, therefore, in accordance with the bailment agreement.

The instant case is substantially identical with a recent decision of the Illinois Appellate Court in Schoen v. Wallace, 1948, 334 Ill.App. 294, 78 N.E.2d 801, 802. In that case, the plaintiff delivered a mink coat, valued at $3,500 to defendant for storage, and received therefor a fur storage receipt which contained the following printed provision: "It is further understood and agreed that the above valuation placed upon the articles herein mentioned are hereby accepted and ratified by the owner or owners, and are binding upon them, as well as ourselves, and our liability shall in no event exceed the amount of such valuations in case of any loss or damage, either during the period of storage or in the course of delivery by reason of any cause whatsoever, including our own negligence, and the adjustment for any loss shall be made on the basis of the valuation stated herein."

The receipt was addressed to the plaintiff and stated the valuation of the mink coat to be $100. In affirming a judgment for plaintiff in the amount $100 only, the Appellate Court stated:

"The basic question presented for determination is the validity of the agreement between the parties limiting defendant bailee's liability to $100. The precise question here involved has not been passed upon by our Supreme Court. Plaintiff maintains that a contract between a bailor and bailee to relieve the bailee of liability for his own negligence or fraud is contrary to public policy, and in support of her contention relies on Healy v. New York Cent. & H. R. R. Co., 153 App.Div. 516, 138 N.Y.S. 287; Denver Union Terminal Ry. Co. v. Cullinan, 72 Colo. 248, 210 P. 602, 27 A.L.R. 154; Thompson v. Mobile Light & Ry. Co., 211 Ala. 525, 101 So. 177, 34 A.L.R. 921; Sporsem v. First Nat. Bank, 133 Wash. 199, 233 P. 641, 40 A.L.R. 854; and other cases in foreign jurisdictions.

"In the instant case no fraud is alleged in the complaint nor is there any evidence tending to prove defendant guilty of fraudulent conduct. In Jacobs v. Grossman, 310 Ill. 247, 250, 141 N.E. 714, 715, the court said: 'Whatever may be the right of the parties in a bailment for the mutual benefit of the bailor and the bailee, it is unquestionably the law that the parties may increase or diminish these rights by stipula-

tions contained in the contract of bailment.' To the same effect is Krupp v. National Fur Dressing & Dyeing Co., 250 Ill.App. 282, and Shayne v. Krebs, 55 Ill.App. 238.

"Plaintiff argues that if the validity of the agreement in the present case is sustained furriers would be encouraged either to convert garments in their custody to their own use or would be induced to exercise minimum care. Plaintiff did business with the defendant over the years because she 'felt he was reliable.' She was free to buy a mink coat from any furrier in the city but she chose to do business with the defendant. It was a private transaction in which the public is in no way concerned. Nor is it a matter of public interest whether the loss shall be borne by the plaintiff's insurer or by the defendant. Checkley v. Illinois Cent. R. Co., 257 Ill. 491, 100 N.E. 942, 44 L.R.A.,N.S., 1127; Bartee Tie Co. v. Jackson, 281 Ill. 452, 117 N.E. 1007. While the facts in the cases last cited are dissimilar to those in the case at bar we think the principle emerging from these cases is applicable here, which permits the parties in a bailment to relieve or limit the bailee's liability for his own negligence.

"Obviously when defendant inquired of plaintiff about insurance on her mink coat his sole purpose was to protect her against any loss resulting from theft or fire while the coat was stored in his vault. On the other hand, since plaintiff in the event of a loss was fully covered, she was unwilling to pay an additional charge of $34 for insurance from which not she but only her insurer could benefit. If plaintiff's coat had not been lost she would have reaped the benefit of the agreement for one year's free storage. Therefore it seems to us unjust to permit plaintiff to repudiate the agreement because the coat was lost. Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314, 44 L.R.A.,N.S. 257."

█ Plaintiff attempts to distinguish the Schoen case on the ground that there the bailment agreement specifically limited liability for loss from any cause "including our own negligence", whereas in the instant case there it no such specific provision.

In the view of the Court, however, the phrase "any loss or damage to said article," is intended to limit the liability of the bailee for loss, however caused, including a loss due to the bailee's own negligence. The validity of this conclusion should be apparent when it is realized that a bailee is not an insurer of the subject of the bailment. Negligence in the care of the goods is the basis of the bailee's liability. McCall v. Pullman Co., 1947, 331 Ill.App. 561, 73 N.E. 2d 658. It follows, therefore, that, in order to have any meaning whatsoever, the limitation of liability must necessarily refer to losses due to the bailee's own negligence.

█ Plaintiff further contends that the limitation provision is repugnant to, and in conflict with, Paragraph 3 of the permanent receipt, since the latter specifically enumerates those acts for which Irmasam Furs would not be liable. This argument is untenable. Paragraph 3 merely sets forth certain conditions under which Irmasam Furs would not be liable for loss, whereas Paragraph 2 is intended simply to limit the extent of liability in circumstances where liability concededly attaches. The same reasoning is applicable to the alleged conflict between Paragraph 2 and the provision on the face of the permanent receipt. There again, if an article is covered by insurance when submitted for storage, the bailee would be liable for damage by moths or vermin; but, if such article were valued in the contract at the sum of $100, the bailee's liability would be limited to such amount, or to such other sum as the plaintiff saw fit to declare as its value.

Plaintiff also contends that, if the limitation provision is applicable to losses due to defendant's negligence, the defendant could at any time have freely converted the coat to its own use or have maliciously destroyed it. A similar argument was tendered in the Schoen case and rejected by the court. Patently, the limitation would not apply where the defendant converted the coat to its own use or was otherwise guilty of fraud, but no fraud is alleged in the complaint as against the defendant in this case.

For the foregoing reasons, the Court sustains the defense that the liability of the defendants, Irving Morris and Maurice L. Rosenberg, co-partners doing business as Irmasam Furs, is limited to $100 as provided in the two receipts comprising the bailment contract.